ADAMS EXPRESS COMPANY *v.* COMMON-
WEALTH OF KENTUCKY.

ERROR TO THE CIRCUIT COURT OF WHITLEY COUNTY, STATE
OF KENTUCKY.

No. 271. Argued May 10, 11, 1915.—Decided June 14, 1915.

The first resort, with a view to ascertaining the meaning of a statute, is to the language used; if that is plain there is an end to construction and the statute is to be taken to mean what it says.

The purpose of Congress in enacting the Webb-Kenyon Act of March 1, 1913, c. 90, 37 Stat. 69, was not to prohibit all interstate shipment or transportation of liquor into so-called dry territory, but to render the prohibitory provisions of the statute operative whenever, and only when, the liquor is to be dealt with in violation of the law of the State into which it is shipped.

Except as affected by the Wilson Act of 1890, which permits state laws to operate on interstate shipments of liquor after termination of transportation to the consignee and the Webb-Kenyon Act of 1913, which prohibits interstate transportation of liquor into a State to be dealt with therein in violation of the laws of that State, the interstate transportation of liquor is left untouched and remains within the sole jurisdiction of Congress under the Federal Constitution.

As it appears that an interstate shipment of liquor into Kentucky was not to be used in violation of the laws of that State as such laws have been construed by its highest court, the Webb-Kenyon Act had no effect to change the general rule that a State may not regulate commerce which is wholly interstate.

THE facts, which involve the construction and application of § 2569a of the statutes of Kentucky in regard to local option and of the Act of Congress known as the Webb-Kenyon Law, are stated in the opinion.

*Mr. Joseph S. Graydon* and *Mr. Lawrence Maxwell* for plaintiff in error:

A citizen of Kentucky has the constitutional right to possess and use intoxicating liquors.

The cases in the Court of Appeals of Kentucky upheld this right as well as the cases in other States.

The Webb-Kenyon Law does not authorize the application of a state statute to an interstate shipment for lawful, personal use.

The purpose of the law as shown by debates in Congress and the cases in the Court of Appeals of Kentucky and other courts also so hold.

There are conflicting opinions on the subject, involving the West Virginia law; on which appeals are pending in this court.

The cases involving imported liquors intended to be used in violation of law can be distinguished.

The Webb-Kenyon Law, as construed and applied by the lower court, would be unconstitutional.

In support of these contentions, see *Adams Exp. Co.* v. *Kentucky*, 214 U. S. 218; *Adams Exp. Co.* v. *Commonwealth*, 154 Kentucky, 462; *Adams Exp. Co.* v. *Commonwealth*, 160 Kentucky, 66; *Adams Exp. Co.* v. *Crigler*, 161 Kentucky, 89; *American Exp. Co.* v. *Beer*, 65 So. Rep. 575; *Anderson Net Co.* v. *Worthington*, 141 U. S. 468; *Atkinson* v. *Southern Exp. Co.*, 94 S. Car. 44; *Bristol Distributing Co.* v. *Southern Exp. Co.* (Sup. Ct. App. of Virginia, unreported); *Calhoun* v. *Commonwealth*, 154 Kentucky, 70; *Clark Distilling Co.* v. *American Exp. Co.*, 219 Fed. Rep. 339; *Clark Distilling Co.* v. *West. Maryland Ry.*, 219 Fed. Rep. 333; *Commonwealth* v. *Campbell*, 133 Kentucky, 50; *Commonwealth* v. *Smith*, 163 Kentucky, 227; *Delaware* v. *Grier*, 88 Atl. Rep. 579; *Downes* v. *Bidwell*, 182 U. S. 244; *Dunlap* v. *United States*, 173 U. S. 65; *Eidge* v. *Bessemer*, 164 Alabama, 599; *Hamm Brewing Co.* v. *Chicago, R. I. & P. Ry.*, 215 Fed. Rep. 672; *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Iowa* v. *U. S. Exp. Co.*, 145 N. W. Rep. 451; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 19; *Kansas* v. *Doe*, 92 Kansas, 212; *Kirmeyer* v. *Kansas*, 236 U. S. 568; *Louis. & Nash. R. R.* v. *Cook Brewing Co.*, 223 U. S. 70; *Martin* v. *Commonwealth*, 153 Kentucky, 784; *North Carolina* v. *Cardwell*, 166 N. Car. 308; *North Carolina* v. *Williams*, 146 N. Car. 618; *Palmer* v. *Southern Exp. Co.*, 165 S. W. Rep. 236; *Ex parte Peede*, 170 S. W. Rep. 749; *In re Rahrer*, 140 U. S. 155; *Rhodes* v. *Iowa*, 170 U. S. 412; *Smith* v. *Southern Exp. Co.*, 82 S. E. Rep. 15; *Southern Exp. Co.* v. *Alabama*, 66 So. Rep. 115; *Southern Exp. Co.* v. *High Point*, 83 S. E. Rep. 254; *United States* v. *Oregon Navigation Co.*, 210 Fed. Rep. 378; *Vance* v. *Vandercook* (1), 170 U. S. 439; *VanWinkle* v. *State*, 91 Atl. Rep. 385; *West Virginia* v. *Adams Exp. Co.*, 219 Fed. Rep. 331 and 794. See also Committee on Judiciary hearings, January 11, 1912; Congressional Record, Feb. 8, 1913, p. 365; Freund on Police Power, § 453; Kentucky Criminal Code, § 347;

Kentucky Statutes, § 2569a; Webb-Kenyon Law, 37 Stat. 699.

*Mr. James Garnett,* Attorney General of the State of Kentucky, with whom *Mr. Robert T. Caldwell,* Assistant Attorney General of the State of Kentucky, was on the brief, for defendant in error.

*Mr. W. B. Wheeler* and *Mr. J. B. Snyder* filed a brief as *amicus curiæ* by permission of the court.

MR. JUSTICE DAY delivered the opinion of the court.

The Adams Express Company was indicted for violation of § 2569a of the statutes of the State of Kentucky, which, omitting the portions not essential to the consideration of this case, provides:

"It shall be unlawful for any . . . public or private carrier to bring into, . . . deliver or distribute, in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited, . . . any spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it may be called; and this act shall apply to all packages of such intoxicating liquors whether broken or unbroken. . . . Any . . . public or private carrier violating the provisions of this act shall be deemed guilty of violating the local option law and shall be fined not less than fifty nor more than one hundred dollars for each offense. . . . And the place of delivery of such liquors shall be held to be the place of sale; . . ."

The charge of the indictment was that the Adams Express Company, doing the business of a common carrier in Kentucky, did knowingly bring into and deliver in Whitley County of that State certain intoxicating liquors to one John Horshaw, contrary to law. This case, with

eighteen others, was heard in the Circuit Court of Whitley County, upon an agreed statement of facts, which stipulated that the Adams Express Company was engaged in the business of a common carrier and did such business in Whitley County, Kentucky, and between that county and the cities of Jellico and High Cliff, in the State of Tennessee. That on the dates named in the indictments the Adams Express Company knowingly brought into, transferred, delivered and distributed certain spirituous liquors, to wit: whiskey, in local option territory and where the local option law was in force, as charged in the indictment. That before bringing such liquors into such territory the consignees of said liquors, being the persons named in the indictment, sent orders by mail for such liquors to dealers at Jellico and High Cliff, in the State of Tennessee, and paid the purchase price of said liquors to said dealers at the places named in Tennessee. That upon receipt of the orders, the dealers, at their respective places of business at Jellico and High Cliff, Tennessee, for the purpose of filling such orders delivered to Adams Express the several packages of liquor, directing the Express Company to carry and deliver the same to such persons; that the Adams Express Company did thereupon carry said packages of liquor from Jellico and High Cliff, in Tennessee, into Whitley County, Kentucky, and there delivered the same to the consignees thereof, who were the persons who had made the orders and to whom the indictments charged the defendant with delivering and distributing the liquors mentioned. That the liquors were intended by said consignees for their personal use and were so used by them, and were not intended by them to be sold contrary to law, and were not so sold by them. That the transactions and all of them described occurred since the enactment and going into effect of the Act of Congress known as the Webb-Kenyon Law.

The Express Company requested a peremptory instruc-

tion for a verdict of not guilty because the shipments of liquor were interstate shipments and constituted interstate commerce within the meaning of the commerce clause of the Federal Constitution. That the liquors being for the personal use of the consignees respectively § 2659a is repugnant to the constitution of Kentucky, and if the indictment was authorized by the Act of Congress known as the Webb-Kenyon Law, that law is in contravention of the interstate commerce clause of the Constitution of the United States and of the Fifth and Fourteenth Amendments to the Constitution. This request for a peremptory instruction for the defendant was refused. The court instructed the jury that if it believed from the evidence. that the Adams Express Company, as a common carrier, brought any spirituous, vinous or malt liquors into Whitley County, being local option territory in the State of Kentucky, and there delivered the same to the persons named in the indictment, then the defendant was guilty and its punishment should be fixed at not less than fifty dollars nor more than one hundred dollars; and that upon the whole case if they had any reasonable doubt of the guilt of the Company they should find a verdict of not guilty. The defendant duly excepted to the giving of these instructions and to the refusal to grant its prayer for a peremptory instruction. The Company was convicted, and fined in the sum of fifty dollars. That amount not being sufficient to give the Court of Appeals of the State jurisdiction, a writ of error was taken from this court to the Circuit Court of Whitley County.

The Kentucky statute now under consideration was before this court in the case of *Louis. & Nash. R. R. Co. v. Cook Brewing Co.*, 223 U. S. 70. In that case it was held that, as applied to interstate shipments, the statute was void as an attempt by the State to regulate commerce among the States. Such must still be the fate of the statute unless it is the effect of the Act of Congress of March 1,

1913, c. 90, 37 Stat. 699, known as the Webb-Kenyon Act, to require a different result.  That Act provides:

"An Act Divesting Intoxicating Liquors of Their Interstate Character in Certain Cases.

"Be it enacted, &c., that the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, is hereby prohibited."

Before entering upon a consideration of the meaning of this act, it is well to have in mind certain principles of constitutional law and, as well, certain legislation of Congress upon this subject in force at the time when the Webb-Kenyon Act was passed.  The Constitution of the United States grants to Congress authority to regulate commerce among the States, to the exclusion of state control over the subject.  This power is comprehensive, and subject to no limitations, except such as are found in the Constitution itself.  This general principle runs through all the cases decided in this court considering the matter, and has never been questioned since Chief Justice Marshall, for the court, delivered the judgment in *Gibbons* v. *Ogden*, 9 Wheat. 1.  Applying this general principle,

it was held by this court in *Leisy* v. *Hardin*, 135 U. S. 100, that the State of Iowa, in the absence of congressional permission, had no authority to prohibit the sale of liquor in original packages in the hands of importers from other States in that State, and the court there declared that, whatever the individual views of its members might be concerning the deleterious qualities of certain articles of commerce, when such articles were recognized by Congress as legitimate subjects of interstate commerce such interstate traffic could not be controlled by the laws of the State amounting to regulations thereof. In the course of the consideration of this case, this court said (pp. 123, 124):

"The responsibility is upon Congress, so far as the regulation of interstate commerce is concerned, to remove the restriction upon the State in dealing with imported articles of trade within its limits, which have not been mingled with the common mass of property therein, if in its judgment the end to be secured justifies and requires such action."

After the decision of *Leisy* v. *Hardin,* Congress passed the Wilson Act of 1890, 26 Stat. 313. That act made intoxicating liquors transported in interstate commerce subject to the exercise of the police power of the States upon arrival in the State, in the same manner as though such liquors had been produced in the State or Territory into which the same were shipped. The constitutionality of that act was attacked and came under consideration in this court in *In re Rahrer*, 140 U. S. 545, where the law was upheld. In affirming the right of Congress to pass the statute, this court said (p. 561):

"In so doing, Congress has not attempted to delegate the power to regulate commerce, or to exercise any power reserved to the States, or to grant a power not possessed by the States, or to adopt state laws. It has taken its own course and made its own regulation, applying to

these subjects of interstate commerce one common rule, whose uniformity is not affected by variations in state laws in dealing with such property. . . .

"(P. 564) Congress did not use terms of permission to the State to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the State not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction."

In *Rhodes* v. *Iowa*, 170 U. S. 412, it was held that the Wilson Act did not have the effect to permit interstate shipments of liquor to come under the operation of the liquor laws of the State until after their delivery to the consignee, and that one receiving liquor shipped in interstate commerce obtained the right to use the same, although he no longer had the right to sell it free from the restrictions imposed by the laws of the State. And see *Vance* v. *Vandercook*, 170 U. S. 438.

From what we have said, it follows that, before the passage of the Webb-Kenyon Act, while the State in the exercise of its police power might regulate the liquor traffic after the delivery of the liquor transported in interstate commerce, there was nothing in the Wilson Act to prevent shipment of liquor in interstate commerce for the use of the consignee, provided he did not undertake to sell it in violation of the laws of the State. The history of the Webb-Kenyon Act shows that Congress deemed this situation one requiring further legislation upon its part, and thereupon undertook, in the passage of that Act, to deal further with the subject, and to extend the prohibitions against the introduction of liquors into the States by means of interstate commerce. That the act did not assume to deal with all interstate commerce shipments of intoxicating liquors into prohibitory territory in the States

is shown in its title, which expresses the purpose to divest intoxicating liquors of their interstate character in certain cases. What such cases should be was left to the text of the act to develop.

It is elementary that the first resort, with a view to ascertaining the meaning of a statute, is to the language used. If that is plain there is an end to construction and the statute is to be taken to mean what it says.

Extraneous words omitted, this statute reads: "The shipment or transportation of . . . intoxicating liquors from one State . . . into another State . . . which intoxicating liquor is intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State . . . is hereby prohibited." It would be difficult to frame language more plainly indicating the purpose of Congress not to prohibit all interstate shipment or transportation of liquor into so-called dry territory and to render the prohibition of the statute operative only where the liquor is to be dealt with in violation of the local law of the State into which it is thus shipped or transported. Such shipments are prohibited only when such person interested intends that they shall be possessed, sold or used in violation of any law of the State wherein they are received. Thus far and no farther has Congress seen fit to extend the prohibitions of the act in relation to interstate shipments. Except as affected by the Wilson Act, which permits the state laws to operate upon liquors after termination of the transportation to the consignee, and the Webb-Kenyon Act, which prohibits the transportation of liquors into the State to be dealt with therein in violation of local law, the subject-matter of such interstate shipment is left untouched and remains within the sole jurisdiction of Congress under the Federal Constitution.

It becomes necessary, therefore, to inquire whether a

shipment of the character here in question comes within the terms of the Webb-Kenyon Act, because of the purpose to use the liquor in violation of the law of the State of Kentucky. The stipulation upon which the case was tried shows that the liquor was bought and paid for in Tennessee, and was shipped from that State into the State of Kentucky for the personal use of the consignee without any intention on his part to dispose of it contrary to the law of the State.

The case under review was one of nineteen tried under the same stipulation. In one of them the fine imposed was large enough to give jurisdiction to the Court of Appeals of Kentucky, and the case before that court is found in 154 Kentucky, 462. Considering whether such shipment was in violation of the law of the State, that court, after commenting upon the fact that the stipulation showed that the liquors were intended by the consignees for their personal use and were not intended by them to be sold and were not sold, contrary to law, further said:

"This being the purpose for which the liquor was intended to be received, possessed and used, it is clear that the consignees who received from the carrier the liquor did not, in so doing, violate or intend to violate any law of this state, because there is not and never has been any law of this state that prohibited the citizen from purchasing, where it was lawful to sell it, intoxicating liquor for his personal use, or from having in his possession for such use liquor so purchased. *Calhoun* v. *Commonwealth,* 154 Kentucky, 70; *Martin* v. *Commonwealth,* 153 Kentucky, 784. As said in *Commonwealth* v. *Campbell,* 133 Kentucky, 50:

"'The history of our state from its beginning shows that there was never even the claim of a right on the part of the Legislature to interfere with the citizen using liquor for his own comfort, provided that in so doing he committed no offense against public decency by being intoxicated;

and we are of opinion that it never has been within the competency of the Legislature to so restrict the liberty of the citizen, and certainly not since the adoption of the present Constitution. The Bill of Rights, which declared that among the inalienable rights possessed by the citizens is that of seeking and pursuing their safety and happiness, and that the absolute and arbitrary power over the lives, liberty, and property of freemen exists nowhere in a republic, not even in the largest majority, would be but an empty sound if the Legislature could prohibit the citizen the right of owning or drinking liquor, when in so doing he did not offend the laws of decency by being intoxicated in public. . . . Therefore the question of what a man will drink, or eat, or own, provided the rights of others are not invaded, is one which addresses itself alone to the will of the citizen. It is not within the competency of government to invade the privacy of a citizen's life and to regulate his conduct in matters in which he alone is concerned, or to prohibit him any liberty the exercise of which will not directly injure society.'"

And further,

"It, therefore, appears that the issue in this case really comes down to this, was the liquor involved in this transaction intended by any person interested therein to be received, possessed, sold or in any manner used in violation of any law of this state? It is shown by the agreed state of facts, when considered in the light of the Constitution and laws of the state, and the opinions of this court, that it was not."

In the subsequent case of *Adams Express Company* v. *Commonwealth*, 160 Kentucky, 66, it appeared that the liquor was intended by the consignee to be sold in violation of the law of the State, and was so sold, and the court held that in such case the carrier was bound before the delivery of the whiskey, to be circumspect and to use

ordinary care to learn the purpose for which it was to be used, and if, acting in good faith upon reasonable grounds, the carrier was misled, it was not liable, otherwise it was; and that the question was one of fact for the jury.   The court, however, expressly adhered to its ruling in *Express Co.* v. *Commonwealth*, 154 Kentucky, *supra*, under facts such as were there presented, and such as appear in the case now under consideration.

It therefore follows that, inasmuch as the facts of this case show that the liquor was not to be used in violation of the laws of the State of Kentucky, as such laws are construed by the highest court of that State, the Webb-Kenyon Law has no application and no effect to change the general rule that the States may not regulate commerce wholly interstate.   As it appears that the conviction in this case was for an interstate transportation, not prohibited by the Webb-Kenyon Act, the rights under the interstate commerce clause of the Constitution expressly set up by the Express Company were denied by the judgment of conviction in the Circuit Court of Whitley County, and that judgment must accordingly be reversed.

*Reversed.*