### STATE v. SOUTHERN EXPRESS COMPANY.

(Filed 14 March, 1917.)

**1. Intoxicating Liquors—Statutes—Commerce—Carriers of Goods.**

Since the passage of the Webb-Kenyon Act of Congress, a State statute which makes it a misdemeanor to transport, deliver, etc., any intoxicating beverage in a prescribed locality is valid as to interstate shipments, and enforcible against common carriers violating it. *Express Co. v. High Point,* 167 N. C., 103, cited and distinguished.

**2. Intoxicating Liquors—Beverage—Definition—Local and General Law.**

Where a statute prohibits the transportation to and delivery of "intoxicating beverages" in a certain prescribed locality, the language employed includes all the different kinds of liquors named in the general prohibition law, *i. e.,* "spirituous, vinous, fermented, or malt liquors, or intoxicating bitters."

INDICTMENT tried at April Term, 1916, of RANDOLPH, before *Ferguson, J.* A special verdict was rendered, upon which the court pronounced the defendant not guilty, and the State appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*Robeson, Barnhart & Smith for defendant.*

48—173

BROWN, J.  The substance of the special verdict is that the defendant delivered to Matthew Hargrove one quart of whiskey on 25 November, 1915, shipped from Lynchburg, Va., and intended for the personal consumption of said Hargrove, and that the delivery was made within the corporate limits of the town of Trinity.

The prosecution is based on a local statute, chapter 267 of the Public-Local Laws of the Extra Session of 1913, the first section of which declares: "That the manufacture, sale, delivery, or transportation for the purpose of delivery of any intoxicating beverage in the corporate limits of the town of Trinity, Randolph County, shall be unlawful, except as herein provided."

It is admitted that the delivery is not within the proviso of the statute. This statute, operating as it does upon a carrier engaged in interstate commerce, is a direct burden upon such commerce, and conflicted with the power of Congress.  The statute, therefore, could not be used to prevent interstate shipments from Virginia into North Carolina.  This proposition has not been open to question since the decision in *Leisy v. Hardin,* 135 U. S., 100.  But since that decision the Webb-Kenyon law has been enacted and its constitutionality sustained by the Supreme Court in *Clark Distilling Co. v. West Virginia et al.,* 8 January, 1917. In that case the Court says: "As the State law forbade the shipment into or transportation of liquor in the State, whether from inside or out, and all receipt and possession of liquor so transported without regard to the use to which the liquor was to be put, and as the Webb-Kenyon Act prohibited the transportation in interstate commerce of all liquor 'intended to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State,' there would seem to be no room for doubt that the prohibitions of the State law were made applicable by the Webb-Kenyon law.  If that law was valid, therefore, the state law was not repugnant to the commerce clause."

It is contended that the decision of the Supreme Court in *Adams Express Co. v. Kentucky,* 238 U. S., 190, conflicts with the *West Virginia* case.  As the latter is the latest utterance of the Court, we must follow it, and are not concerned with a supposed conflict in its decisions.  But referring to such contention, the Court says in the *West Virginia case:* "The case in this Court relied upon to establish the contrary (*Adams Express Co. v. Kentucky,* 238 U. S., 190) clearly does not do so.  All that was decided in that case was that as the court of last resort of Kentucky into which liquor had been shipped had held that the State statute did not forbid shipment and receipt of liquor for personal use, therefore, the Webb-Kenyon Act did not apply, since it only applied to things which the State law prohibited."

The statute under which this indictment is brought differs very materially from the High Point statute, construed in *Express Co. v. High Point,* 167 N. C., 103. In that case we said: "The General Assembly of North Carolina has not, up to this time, undertaken to prohibit the introduction of liquor into this State for individual consumption. . . . It is not contended, so far as we know, by any one, where the State permits the importation of liquor for the individual consumption of its citizens or for any other lawful purpose, that the Webb-Kenyon law has any effect."

We were referring to the High Point act and the general law of this State, and not to any merely local act. As we construed the High Point act, it did not forbid the delivery of liquor for personal consumption. That the Trinity act forbids the delivery of liquor for personal consumption is manifest. It is not confined to deliveries for purposes of sale. The delivery "of any intoxicating beverage" is prohibited, whether for sale or personal use.

The word "beverage" means "liquid for drink; drink; usually applied to drink artificially prepared and of an agreeable flavor; as, an intoxicating beverage. Specifically, a name applied to various kinds of drink." Webster's International Dictionary.

"Drink of any kind; liquor for drink; as, water is the common beverage; intoxicating beverages." The Century Dictionary.

The words in the above statute, "intoxicating beverage," should be understood as a general term including all the different kinds of liquors named in the general prohibition law, namely, "spirituous, vinous, fermented or malt liquors or intoxicating bitters." Public Laws, Extra Session 1908, ch. 71, sec. 1.

The word "beverage" is to be understood as indicating the use of such liquors as distinguished from their use as a medicine. See *People v. Hichman,* 75 Mich., 587.

We are of opinion that the defendant is guilty under the facts found in the special verdict. The cause is remanded with direction to proceed to judgment.

Reversed.