WEST JERSEY AND SEASHORE RAILROAD COMPANY, RE-
SPONDENT, v. CITY OF MILLVILLE, APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

1. A city ordinance required all bills of lading of any common car-
rier to be open to inspection of the city commissioners and the
police officers of the city, and required every common carrier to
keep at its office in the city an alphabetical record of all con-
signments of alcoholic liquors received by it in the city, the names
of shipper and consignee and the quantity of each shipment;
this record was required to be open to inspection by any of the
commissioners and police officers of the city; the prosecutor was
a railroad company engaged in interstate and intrastate busi-
ness. *Held,* that these provisions of the ordinance, so far as they
attempt to affect the prosecutor as a common carrier, are in
conflict with the act of congress regulating interstate commerce,
and must be set aside.

2. A city ordinance made it unlawful for any common carrier or
express company to deliver in the city any alcoholic liquor con-
signed to a club, lodge or other association. The city charter
gives power to license innkeepers and retailers of spirituous
liquors and places for the sale of fermented liquors, and makes
it unlawful to sell within the corporate limits spirituous liquors
in quantities less than five gallons without a license. *Held,* that
this did not authorize the ordinance in question.

3. The Commission Government acts (*Pamph. L.* 1911, *p.* 462;
*Pamph. L.* 1912, *p.* 643; *Pamph. L.* 1916. *p.* 306) do not justify
an ordinance making it unlawful for any common carrier to de-
liver in the city any alcoholic liquor consigned to a club, lodge
or other association.

4. The prosecutor is a railroad company engaged in interstate and
intrastate business; an ordinance of a city attempted to prohibit
traffic in alcoholic liquors without making any distinction be-
tween interstate and intrastate shipments. *Held,* that if invalid
as to interstate shipments, it was also invalid as to intrastate
shipments, as the two could not be severed in view of the object
of the ordinance.

5. The act of congress of 1913, known as the Webb-Kenyon act,
prohibits the shipment or transportation of intoxicating liquor
in interstate commerce when in violation of the law of the state.
*Held,* that the shipments sought to be forbidden by the ordi-
nances of Millville were not in violation of any law of this state
and hence not prohibited by the Webb-Kenyon act.

On appeal from the Supreme Court.

For the respondent, *Walter H. Bacon.*

For the appellant, *Louis H. Miller.*

The opinion of the court was delivered by

SWAYZE, J. The railway company, although located entirely in New Jersey, carries freight and express matter from other states into this state, and the interstate character of a part of its traffic is not questioned. It is, therefore, subject to the Interstate Commerce act. It removed to the Supreme Court by *certiorari* an ordinance of Millville, the object of which seems to have been to make illegal the use, sale or distribution of alcoholic liquors in clubhouses, lodge rooms and the like. As printed in this record the ordinance applies to every person who shall use, barter, sell, or assist or abet in bartering, selling or distributing any alcoholic liquors or received or kept. There seems to be no doubt that the last four words should be "so received or kept," but this can make no difference in the result, and we pass it by.

Section 5 of the ordinance makes it unlawful for any railroad or other common carrier or express company to deliver in Millville any package of alcoholic liquor consigned to a club, lodge or other association—consigned to any person for or on account of any club, lodge or other association; consigned to any person where there are marks or lettering, numerals or other device on the package indicating that it should be delivered to any club house, lodge room, boat house, or like place in the city or to a member of any club, lodge or association at any club house, boat house, lodge room or like place in the city.

Section 12 ordains that the bills of lading and other documents of any common carrier should be open to the inspection of the city commissioners, or any of them, and the police officers of the city. Section 13 requires every common carrier to keep at its office in the city an alphabetical record of all consignments of alcoholic liquors received by it in Millville, the names of shipper and consignee, and the quantity of each shipment. This record also, it was ordained, should be open

to inspection by any of the commissioners and the police officers of the city. The Supreme Court adjudged these sections of the ordinance bad and set aside the provisions of the ordinance which attempted to prevent the delivery of intoxicating liquors in Millville by the prosecutor as a common carrier, and required the prosecutor to keep books and records in a specified manner and to open the same to inspection by the city commissioners, especially sections 5, 12 and 13, in so far as they affect or attempt to affect the railroad company as a common carrier. The Interstate Commerce act—*U. S. Comp. Stat.* 1913, *p.* 3855, § 15 (6)—imposes a heavy penalty for the disclosure by any officer, agent or employe of a common carrier to any person other than the shipper or consignee, without his consent, of any information concerning the nature, kind, quantity, destination, consignee, of any property tendered or delivered to the common carrier for interstate transportation. Since the ordinance makes no distinction between intrastate and interstate traffic in alcoholic liquor, and its very object would be frustrated by such a distinction, it must apply equally to both kinds of traffic, and if invalid as to interstate traffic must also be invalid as to intrastate traffic. Sections 12 and 13 are obviously in conflict with the section 15 of the act of congress above referred to unless they are saved by the proviso in that act. The proviso permits the carrier to give information in response to legal process under the authority of a state or federal court, to an officer or agent of the United States government or the government of a state or territory in the exercise of his powers, or to an officer or duly authorized person seeking the information for the prosecution of persons charged with or suspected of crime. The other excepted case has no bearing on the present controversy. None of these exceptions reach the present case. The city commissioners and police officers are mere municipal officers, not officers of the United States or of any state or territory. Their power of inspection under the ordinance is not limited to prosecution of crime; and violation of the ordinance is not a crime, but a mere transgression of a municipal regulation. We think it entirely clear that sections 12 and 13 are in con-

flict with the act of congress. In view of this conflict, even if there were no other objection, the railroad company was right in challenging the ordinance *in limine* and not waiting until it had subjected itself to a penalty either under the ordinance or the act of congress. In fact no question is made of the propriety of this action.

The portion of the ordinance which attempts to interfere with the transportation of alcoholic liquors also makes no distinction between intrastate and interstate shipments. For the reason already stated the two cannot be severed, and if the ordinance is invalid as to either it must fail. This is a somewhat different question. The act of congress of 1913, commonly known as the Webb-Kenyon act, prohibited the shipment or transportation of intoxicating liquor of any kind in interstate commerce when intended to be received, possessed, sold or used in violation of the law of the state. *Adams Express Co.* v. *Kentucky,* 238 *U. S.* 190; *Clark Distilling Co.* v. *Western Maryland Railway Co.,* 242 *Id.* 311. The question then is whether alcoholic liquor shipped into this state is received, possessed, sold or used in violation of the law of the state. It is not claimed that any general law of the state is violated. The claim is that power has been conferred upon the city to make the traffic in alcoholic liquor unlawful. A reading of the sections of the city charter to which counsel refers us makes it clear that the alleged power is not to be found in that statute. Section 17 gives the mayor and council sole, only and exclusive right and power of granting license to innkeepers and retailers of spirituous liquors; and also gives them the sole, only and exclusive right and power of licensing places for the sale of fermented liquors, and enacts that the license fees shall be paid to the treasurer for the use of the city. Section 18 makes it unlawful to sell within the corporate limits spirituous liquors in quantities less than five gallons without first having obtained a license. Both sections contemplated licensed sales, not prohibition of the traffic. It was held in *Stokes* v. *Schlacter,* 66 *N. J. L.* 247, that from the power to license the sale of fermented liquor, coupled with other provisions of the charter, there might be

inferred the power to prohibit sales without license; but that is far indeed from the power to prohibit altogether. That the power to regulate is not the same as the power to prohibit is well settled. *McConville* v. *Jersey City,* 39 *Id.* 38; *Township of Summit* v. *New York and New Jersey Telephone Co.,* 57 *N. J. Eq.* 123, 127; *Barnes* v. *Park Commissioners,* 85 *N. J. L.* 70; 86 *Id.* 141. That the power to prohibit is not given in the present case clearly appears from other provisions.

Under section 18 some sales are lawful even without license. It is only sales in quantities less than five gallons that are declared unlawful. The ordinance is not limited to sales unlawful under the charter. It goes beyond the charter in another particular. The power is a power to license sales within the city. This ordinance assumes to make illegal the consignment to clubs or persons in Millville by common carriers of liquor sold and bought elsewhere. As pointed out by counsel for the respondent, the common carrier is under a legal obligation to transport and deliver merchandise tendered to it for that purpose, and Millville cannot, without express legislative authority, change the legal obligation of the carrier. In the absence of such express authority, the legal obligation of the carrier to transport and deliver is determined by the legality of the transaction at the point where the contract of carriage is made. To hold otherwise would put the control of the commerce of the state in the hands of every municipality; the legislature may no doubt thus throttle intrastate trade, but it does not do so by merely granting power to license sales in the municipality. The case differs from *State* v. *Kind,* 80 *N. J. L.* 176, where the sale was not completed outside the municipality. This ordinance undertakes to extend the prohibition to sales completed outside of Millville and to prevent men from shipping into Millville property to which they have acquired a valid title elsewhere. In short, the attempt is to extend the power of Millville over property throughout the state or even the world. The legislative authority for such action must be

clear; here there is nothing in the charter to show that the legislature meant to confer so extensive a power.

The city next seeks to justify its action under the Commission Government acts (*Pamph. L.* 1911, *p.* 462; *Pamph. L.* 1912, *p.* 643; *Pamph. L.* 1916, *p.* 306). As far as concerns the first two acts, it is settled that they do not justify this ordinance. *Salerno* v. *Passaic*, 88 *N. J. L.* 87; affirmed on opinion, 89 *Id.* 370. The general power in section 10 of the charter to suppress vice and immorality, to preserve peace and good order, to suppress disorderly houses, and to prevent disturbances and disorderly assemblages, does not justify the total prohibition of liquor in club houses and lodge rooms. The use of liquor may indeed, as counsel argues, lead to disorder or even to vice and immorality, but such is not its necessary result; the legislature evidently thought not its probable result, since in this very charter, as in so many others, they coupled an express power to license the sale of liquor with the power to suppress vice and immorality. We cannot attribute to them the absurdity of expressly licensing what would necessarily lead to vice and disorder.

It remains to notice the act of 1916, which was passed immediately after the affirmance of the judgment in Salerno *v.* Passaic, and probably to meet the situation created by that decision. The act authorizes all ordinances necessary for the protection of life, health and property, and for the enforcement of all laws of the state regulating the sale of liquor. Cities subject to the act are also authorized to declare and prevent and summarily to abate nuisances whether caused by the sale of liquor or otherwise; to preserve and enforce the good government and general welfare, order and security of the city. The power to declare, prevent and abate nuisances caused by the sale of liquor, does not justify the present ordinance, which does not even pretend to declare or prevent nuisances caused by the sale of liquor; it makes no distinction between sales that result in a nuisance and sales authorized by the licensing laws which do not result in a nuisance. No doubt there are some who think that any

sale of liquor is a nuisance, but that is not the legislature's view; for in this very act it authorizes the passage of ordinances "for the enforcement of all laws of the state regulating the sale of liquor." Among those laws are laws regulating the sale in licensed places and making such sales legal. To enforce these laws the rights and obligations growing out of such sales must be recognized, among which are the right of property, and the right to have a common carrier transport the liquor. The city cannot escape its obligation under the act of 1916 to enforce these laws; the power given is to enforce all the laws, not some of them, and to enforce the laws regulating the sale of liquor, not merely laws prohibiting the sale, which are not in any proper sense a regulating of the sale.

We have dealt with the case as if a municipal ordinance was a law of the state within the meaning of the Webb-Kenyon act. Whether this assumption is correct need not now be considered. It is enough to say that the shipment and transportation forbidden by this ordinance is not a shipment and transportation in violation of any law of this state.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   11.

*For reversal*—None.