### MISSOURI, K. & T. RY. CO. v. DANCIGER et al.

(Circuit Court of Appeals, Eighth Circuit. December 27, 1918.)

No. 4522.

1. COMMERCE ⬤⟳14—INTERSTATE COMMERCE.

Act Cong. June 16, 1906, c. 3335, 34 Stat. 267, providing for the admission into the Union of the then territory of Oklahoma and Indian Territory as the state of Oklahoma, declared in section 3 that the Constitution to be formed should contain a provision that the manufacture, sale, barter, or otherwise furnishing of intoxicating liquors within those parts of the new state known as the Indian Territory and the Osage and other Indian reservations should be prohibited for a period of 21 years from the date of the admission. Const. Okl. art. 1, § 7, forbids the manufacture and sale of intoxicating liquors in the state, and Rev. Laws Okl. 1910, § 3605, contains a similar provision. Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (Comp. St. 1916, § 8739), declares that the shipment or transportation in any manner or by any means whatsoever of any intoxicating liquors from one state, territory, or district of the United States to any other state, territory, or district, which liquor is intended by any person to be received, possessed, or sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, territory, or district, is prohibited. *Held* that, as the purpose of the act was to remove from the protection of interstate commerce liquor shipments into those states, territories, or districts where the manufacture or sale thereof is unlawful, and to render the state law applicable, the interstate shipment of intoxicating liquor into the state of Oklahoma is unlawful, and a common carrier cannot be enjoined from refusing to receive shipments for delivery into that state.

2. COMMERCE ⬤⟳14—INTERSTATE COMMERCE—INDIAN TERRITORY.

As the Oklahoma laws forbid the manufacture and sale of intoxicating liquors therein, interstate shipments of intoxicating liquor into portions of Oklahoma which formerly were comprised in an Indian reservation are not authorized, because the Indian titles have been extinguished; the Webb-Kenyon Act having deprived such shipments of the protection arising out of their interstate character.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by Dan Danciger and others against the Missouri, Kansas & Texas Railway Company. From a decree for complainant, granting the injunction prayed for, defendant appeals. Reversed and remanded, with directions to dissolve the injunction and dismiss the bill.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James W. Reid, of Parsons, Kan. (W. W. Brown, Joseph M. Bryson, of St. Louis, Mo., and Clifford L. Jackson, of Muskogee, Okl., on the brief), for appellant.

I. J. Ringolsky, of Kansas City, Mo. (Ringolsky & Friedman and Harry L. Jacobs, all of Kansas City, Mo., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. The parties will be referred to as they were named in the court below. The plaintiffs, Dan Danciger, A. Danciger, and others, citizens of Missouri, brought this suit in the court below against the Missouri, Kansas & Texas Railway Company, a Kansas railway corporation, engaged as a common carrier in interstate commerce between the states of Missouri, Kansas, Oklahoma, and other states, to permanently enjoin it from refusing to receive from the plaintiffs at Kansas City, Mo., and carry and deliver to persons in Osage county, Okl., intoxicating liquors that they had sold or may thereafter sell in Kansas City, Mo., to persons in said Osage county. The matter was heard in the trial court upon the bill and a stipulation of facts, resulting in a decree for the plaintiffs, permanently restraining the railway company as prayed, and it appeals.

The plaintiffs are copartners engaged in selling whisky and other intoxicating liquors under the name of Danciger Bros. and other names in Kansas City, Mo., upon mail orders and otherwise. The defendant railway company operates a line of railroad from Kansas City, Mo., to various points in Kansas and Oklahoma, including Osage county in the latter named state, and is engaged as a common carrier of property in interstate commerce from Kansas City, Mo., to points on the line of its railroad in Oklahoma, including Osage county, and for some time prior to the commencement of this suit had accepted from the plaintiffs at Kansas City, Mo., and transported into said Osage county, goods and merchandise consigned to persons residing in said county on defendant's line of road, or on the line of a connecting carrier, to whom it delivered the goods for carriage to their destination in said county, but had notified the plaintiffs "that it would no longer accept from them shipments of intoxicating liquors in any quantity or under any condition consigned to parties in Osage county, Okl.," on the ground that all points in said Osage county are "Indian country"; that defendant thereafter refused to receive or accept from plaintiffs any shipment of intoxicating liquors to be carried over its line of railroad from Kansas City, Mo., to any point in Osage county, Okl.

Prior to the commencement of the suit the plaintiffs tendered to the defendant at Kansas City, Mo., for shipment to points in Osage county, Okl., on its line of railroad or the line of a connecting carrier in said county, nine separate shipments of intoxicating liquors, billed and properly addressed, consigned to different persons in said Osage county, with the lawful freight charges thereon to destination, orders for the purchase of which plaintiffs had received by mail at Kansas City, Mo., from persons residing in said Osage county, with the money to

pay for such liquors, all of which shipments the defendant refused to accept or transport to the consignee. This suit was then brought to restrain the defendant temporarily and permanently from refusing to receive from plaintiffs the intoxicating liquors tendered by them to the defendant, and to be thereafter tendered when properly packed, addressed, and consigned to parties in Osage county, Okl., with the lawful freight charges thereon to destination.

On the hearing it was admitted by defendant that shipments (presumably of intoxicating liquors) were tendered to it by plaintiffs for carriage and delivery to points in Osage county, Okl., consigned to persons named in the petition, that defendant refused, and still refuses, to accept, transport, or deliver any such shipment the destination of which is in Osage county, Okl., and that it had previously notified plaintiffs to that effect. It was then agreed that the cause be submitted on the verified bill, affidavits, exhibits, abstracts, and agreements of the parties. These exhibits, abstracts, and agreements show or tend to show that the Indian title to the lands in Osage county, upon which are the towns and villages to which the liquors were destined, had been legally extinguished; that the persons to whom the liquors were consigned were of pure white blood, over 21 years of age, under no legal disabilities, competent to purchase the liquors consigned to them; and that they were purchased by each of them respectively for his own personal use and consumption, but for what particular use is not shown. It was also admitted, or otherwise shown, that the land or territory comprising said Osage county, Okl., had prior to the admission of Oklahoma as a state, been set apart by Congress as a reservation for the Osage Indians in the territory of Oklahoma, and upon the admission of that territory as part of the state of Oklahoma those reservations became Osage county, in the western part of Oklahoma. It was agreed by the parties that the court in deciding the case might consider any statute or law of the state of Oklahoma or of the United States.

Upon these facts the court entered a decree enjoining the defendant as prayed by the plaintiffs, and provided in its order:

"That at the time of the tender of any such shipments the lawful and scheduled charges for such services should be also tendered; that plaintiffs shall tender with such shipment an affidavit, signed and sworn to by the consignee, to the effect that he is a man of pure white (or negro) blood, over 21 years of age; that the shipment of intoxicating liquor ordered by him from plaintiffs, if shipped and transported by the railroad company, will not be used for any unlawful purpose; that said liquor is purchased for, and will be used by affiant for, his own personal use and family consumption; that the destination of said shipment is not in 'Indian country' or the Indian Territory; that the original Indian title of the place of destination has been extinguished, and the affidavit is made for the sole purpose of obtaining the shipment of said liquor, and that affiant knows that everything stated therein is true; also that plaintiffs file with the defendant, prior to any shipments of liquor tendered, an affidavit signed and sworn to by one of them to the effect that the affidavit signed and sworn to by one of them to the effect that the affidavit by the consignee of such shipment is required in a restraining order against said railroad company, and is the original affidavit filed with the plaintiffs with the order which it received for the shipment tendered; that plaintiffs will mail the original bill of lading to the consignee of such shipment, or shipments, with instructions to deliver the envelope containing same to said addressee only;

that affiant will order said railroad company to deliver such shipment only on presentation of the original bill of lading; that no shipment will be tendered to be carried to any person enrolled as an Osage Indian; that every shipment tendered to said railway company will be made in good faith by the plaintiffs, with their belief that the same is intended and will be used for a lawful purpose; and that they have no knowledge or information which would lead them to believe otherwise. It is further ordered that the injunction be permanent upon the giving and approval of a surety bond in the penal sum of $2,000, conditioned as by law provided." Signed by the judge.

[1] The decree so entered in effect requires the defendant as a common carrier of interstate commerce, to accept at Kansas City, Mo., for carriage and delivery to points in Osage county, Okl., intoxicating liquor sold by plaintiffs in Kansas City to persons in said Osage county upon mail orders received by plaintiffs for such liquors, when such sales and purchases are made for the alleged personal use and consumption of the purchasers, notwithstanding the act of Congress approved March 1, 1913 (37 Stat. 699), commonly called the "Webb-Kenyon Law," and the Constitution and statutes of the state of Oklahoma, which forbid the manufacture and sale of intoxicating liquors in that state.

The enabling act of Congress approved June 16, 1906 (34 Stat. p. 267, c. 3335), provides for the admission into the Union of the then territory of Oklahoma and the Indian Territory as the state of Oklahoma, but requires that a convention shall be held at the seat of government of the territory of Oklahoma to form a Constitution for the new state; and section 3 of the act requires that the Constitution so to be formed shall contain a provision that:

"The manufacture, sale, barter, or otherwise furnishing of intoxicating liquors within those parts of the new state known as the Indian Territory and the Osage and other Indian reservations existing on June 1, 1906, shall be prohibited for a period of twenty-one years from the date of the admission of the state, and thereafter until the people of said state shall otherwise provide by amendment of said Constitution and proper state legislation."

The Constitution so formed contained such provision, was adopted by the people of the territories at an election duly called and held for the purpose of ratifying such Constitution, which was duly ratified at such election and became a part of the Constitution of the new state, as section 7, article 1, thereof, and was afterwards included by the Legislature of the state as a part of section 3605 of the Revised Laws of Oklahoma of 1910; which forbids the manufacture, sale, barter, giving away, or otherwise furnishing intoxicating liquors therein, but contained a proviso:

"That the provisions of this chapter shall not apply to the manufacture and sale of unfermented cider and wine made from apples, berries or other fruit grown in this state, and the use of wine for sacramental purposes in religious bodies."

Otherwise the statute forbids the manufacture, sale, and use of intoxicating liquors in the state of Oklahoma.

It is the contention of the plaintiffs that the Webb-Kenyon Law does not forbid them from shipping, nor the defendant from carrying, intoxicating liquors from Missouri into Oklahoma and delivering the

same to the consignee or purchaser of such liquor; that any individual residing in Osage county. has the legal right to purchase wherever he may lawfully do so, and receive in said Osage county intoxicating liquors for his own personal use and that of his family, for any purpose other than to sell the same, in violation of the Oklahoma statute; and Adams Express Company v. Kentucky, 238 U. S. 190, 35· Sup. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167, is relied upon as supporting this contention. This view was apparently upheld by the court below, and the provision of its decree requiring the plaintiffs to tender to the defendant with such shipment of intoxcating liquors to be carried into Oklahoma, the affidavit of plaintiffs and of the consignee that such sale and purchase were made in good faith and for the personal use of the consignee, was obviously to comply with the suggestion in Adams Express Company v. Commonwealth, 160 Ky. 66, 169 S. W. 603, cited in 238 U. S. at page 201, 35 Sup. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167, that the carrier and the shipper should exercise reasonable diligence to not aid in violating the prohibitory law of Oklahoma; otherwise, this requirement of the decree seems wholly without purpose. It should be said, however, in explanation of this part of the decree that it was entered prior to the decision of the Supreme Court in Clark Distilling Company v. Western Maryland Ry. Co., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845, prior to which the constitutional validity of the Webb-Kenyon Law, and its effect, if valid, upon the carriage of intoxicating liquors in interstate commerce into states which have prohibited the manufacture and sale of intoxicating liquors, was a much-mooted question. But in Clark Distilling Company v. Western Maryland Ry. Co., after reciting the text of the Webb-Kenyon Act, the history of its enactment, and reviewing the prior authorities, including Adams Express Co. v. Kentucky, 238 U. S. at page 324, 37 Sup. Ct. 1184, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845, the court says:

"There is no room for doubt that the Webb-Kenyon Act was enacted simply to extend that which was done by the Wilson Act; that is to say, its purpose was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in states contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught. In this light it is clear that the Webb-Kenyon Act, if effect is to be given to its text, but operated so as to cause the prohibitions of the West Virginia law against shipment, receipt, and possession to be applicable and controlling irrespective of whether the state law did or did not prohibit the individual use of liquor."

Referring again to the case of Adams Express Company v. Kentucky, supra, as holding to the contrary, the court says:

"Clearly it does not do so. All that was decided in that case was that as the court of last resort of Kentucky, into which liquor had been shipped, had held that the state statute did not forbid shipment and receipt of liquor for personal use, therefore the Webb-Kenyon Act did not apply, since it only applied to things which the state law prohibited. * * * But we see no ground for following the ruling thus made, since, as we have already pointed out, it necessarily rested upon an entire misconception of the text of the Webb-Kenyon Act, because that act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate com-

merce away from all receipt and possession of liquor prohibited by state law. The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that if that act was within the power of Congress to adopt, there is no possible reason for holding that to enforce the prohibitions of the state law would conflict with the commerce clause of the Constitution; and this brings us to the last question, which is: Did Congress have power to enact the Webb-Kenyon Law?"

And it is held that it did.

This decision puts at rest, at least in all federal courts below the Supreme Court, the question of the constitutional validity of the Webb-Kenyon Law, and subjects intoxicating liquors carried in interstate commerce to the local laws of the state or territory into which they are carried, even though the liquors may be carried for the personal use of the purchaser as a beverage. The record, however, fails to show that the requirement of the decree that, if the injunction is to operate permanently, the plaintiffs shall give a bond in the penal sum of $2,000, with sureties to be approved by the clerk, has been complied with; but the effect of the amendment to the act of Congress approved March 3, 1917 (39 Stat. c. 162, § 5, p. 1069), which provides that "whoever shall order, purchase or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished," etc., may be to annul such injunction, after the effective date of such amendment (July 1, 1917), if it had been previously issued.

[2] Whether or not the Indian title to the lands in the various Indian reservations in Oklahoma, and especially in Osage county, embraced within the Indian reservation or Indian country in that county, has been extinguished, is quite immaterial. The obvious purpose of Congress in forbidding the manufacture, sale, and giving away of intoxicating liquors in those parts of Osage county was to prevent intoxicating liquors coming within reach of the inhabitants of such reservations, more particularly the Indians; but the extinguishment of the Indian title to said lands does not extinguish the craving of the Indian for intoxicating liquors, nor lessen his capacity to absorb all such liquors that he can obtain, and the extinguishment of the Indian title only subjects the inhabitants of the territory to the prohibitory laws of the state of Oklahoma, if they did not already apply to such inhabitants.

We are of the opinion that the decree must be reversed, and the cause remanded, with directions to dissolve the injunction and dismiss the bill, at plaintiffs' costs; and it is so ordered.

Reversed.