## NATIONAL LEAD COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 123.    Argued January 12, 13, 1920.—Decided March 1, 1920.

Section 22 of the Act of August 27, 1894, c. 349, 28 Stat. 509, provides:
"That where imported materials on which duties have been paid
are used in the manufacture of articles manufactured or produced
in the United States, there shall be allowed on the exportation of such
articles a drawback equal in amount to the duties paid on the mate-
rials used, less one per centum of such duties," to be paid under such
regulations as the Secretary of the Treasury shall prescribe.    Where
linseed was imported subject to a specific duty of 20 cents per bushel
of 56 pounds, and made into linseed oil and oil-cake, a by-product
weighing more but worth less than the oil, *held*, that the drawback
on the oil-cake, which alone was exported, should be computed on
the basis of the respective values of the two products and not ac-
cording to their respective weights.    P. 142.
Much weight is given to a contemporaneous and long-continued con-
struction of an indefinite or ambiguous statute by the executive de-
partment charged with its administration.    P. 145.
The repeated reenactment of a statute without substantial change
may amount to an implied legislative approval of a construction
placed upon it by executive officers.    P. 146.
53 Ct. Clms. 635, affirmed.

THE case is stated in the opinion.

*Mr. Alex. Britton,* with whom *Mr. Evans Browne* and
*Mr. F. W. Clements* were on the brief, for appellant:

Levying, in express terms, a specific duty upon linseed
by weight, the act further directly contemplates the pay-
ment of a specific drawback, for the reason that it directs
(§ 22) that the amount of the imported materials con-
tained in the exported article shall be ascertained, and a
drawback equal in amount to the duties paid shall be
allowed.    In other words, it directs that the proper govern-

ment officials estimate how much of the imported material is used in the exported article.

The duty was levied on a certain "quantity" of seed, viz., a bushel of 56 pounds. The drawback by the statute is allowed on the "quantity" of the imported material used in the exported article. In both instances the rule which governed the computation was that of "quantity" and not of "quality." Neither the duty nor the drawback was to be computed on an *ad valorem* basis.

It cannot be successfully claimed that the wording of the statute "under such regulations as the Secretary of the Treasury shall prescribe" authorizes that officer to ascertain anything but the expressly stated "quantity" of the imported materials used. A statute which directs that a "quantity" be ascertained cannot be understood as directing that a "value" be ascertained. The only inquiry which the statute permits is as to the "quantity" of the imported material in the exported article and the duty originally paid thereon.

The terms "quantity" and "value" are far from being synonymous. The former, as used in the statute, refers to the size, bulk, or weight of the material, more especially the weight, as the duty which the statute levied was on a quantity of 56 pounds. The tax was levied on 56 pounds of seed; it was not a tax on $1.62 worth of seed as fixed by the Treasury Regulations, and hence not a tax on $1.62 worth of oil and oil-cake material unseparated.

The purpose of the drawback provision is to make "duty free imports which are manufactured here and then returned" to some foreign country. *Campbell* v. *United States,* 107 U. S. 407. Oil-cake is a manufacture, of value, from an imported material (*Campbell* v. *United States, supra*), is returned to some foreign country, and hence should be made "duty free." The duty paid on it, as such a separate manufacture, has not been determined, although a duty has been collected. Only one material or

article has been imported, on which a single and not a proportionate duty has been levied and paid. Fifty-six pounds of material have been imported; 35 and a fraction pounds of that material are exported; a single duty was paid on the importation of that 56 pounds of material, paid according to the actual weight of that material, and yet when 35.87 pounds of that actual weight are exported the defendant offers to refund a proportionate value drawback on a quantity, upon the importation of which a single and inseparable tax was levied and collected.

The "quantity" of the imported material in the exported product is utterly disregarded and a "relative value" arbitrarily substituted. It is impossible to admit oil cake "duty free" if upon its admission a tax of 5/14 cents per pound on 35.87 pounds, or 13.52 cents, is levied and collected, and upon its exportation there is a refusal to allow a drawback of more than about one-third of that amount, and this in the very face of a statute which directs that the drawback shall be allowed upon the "quantity" composing the exported material. In other words, while collecting a duty of 7.11 cents on 19.91 pounds of oil, a refund or drawback of over twice that amount would be allowed upon the exportation of those same 19.91 pounds, when, under the quantity rule of the statute, it could not be considered as other than 19.91 pounds of the 56 pounds of imported material.

The statute cannot be given a different meaning through the construction and regulations of the Department. *Campbell* v. *United States, supra; Dean Linseed Oil Co.* v. *United States,* 78 Fed. Rep. 467, 468; s. c. 87 Fed. Rep. 453, 457; *St. Paul &c. Ry. Co.* v. *Phelps,* 137 U. S. 528, 536; *Morrill* v. *Jones,* 106 U. S. 466, 467. The construction was not continuous and the statute is clear.

*Mr. Assistant Attorney General Davis,* with whom *Mr. Chas. F. Jones* was on the brief, for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is a suit to recover the difference between the amount of drawback allowed by the Government to the appellant, a corporation, as an exporter of linseed-oil cake, and the amount to which it claims to be entitled under § 22 of the Act of Congress, effective August 27, 1894, c. 349, 28 Stat. 509, which reads as follows:

"That where imported materials on which duties have been paid are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties."

It is further provided in the section that the drawback due thereon shall be paid to the manufacturer, producer or exporter "under such regulations as the Secretary of the Treasury shall prescribe."

The appellant imported large quantities of linseed upon which it paid a specific duty of twenty cents per bushel of fifty-six pounds. This seed, when treated by a simple process, yielded about twenty pounds of linseed oil and about thirty-six pounds of linseed-oil cake, to the bushel. The oil was much more valuable than the oil cake, the latter being composed of the solid substance of the seed and a small amount of oil not recovered which made it valuable as a feed for stock,—it is a by-product, and, except for the small amount of oil in it, would be mere waste.

Appellant exported large quantities of oil cake, derived from seed which it had imported, and made demand in proper form for the drawback provided for by the act of Congress.

The law providing for such drawbacks has differed in form of expression from time to time but, since the Act of August 5, 1861, [c. 45, 12 Stat. 292,] it has not differed in

substance from the Act of 1894, as we have quoted it. The number of articles to which the law is applicable is very great, among them, notably, "refined sugar and syrup which come from imported raw sugar and refined sugar, and syrup which comes from imported molasses."

The Court of Claims found that:

"From August 5, 1861, down to the present time the practice of the Treasury Department where several articles are manufactured from the same imported material has always been to calculate and to pay the drawback by distributing the duty paid on the imported material between such articles in proportion to their values and not in proportion to their weights, as well where the imported material paid a specific as where it paid an ad valorem duty. Such calculation and payment has been made under Treasury Regulations."

The claim of the appellant is that the correct construction of the section, relied upon, requires that the drawback should be computed on the basis of the weights of the oil and oil cake derived by the process of manufacture from the seed, instead of on the basis of the values of the two products, as it was computed by the Government, and the question for decision is, whether the department regulation is a valid interpretation of the statute.

The act quoted provides that where imported materials are used in this country in the manufacture of articles which are exported, a drawback shall be allowed *"equal in amount to the duties paid on the materials used"* less one per centum. What was the amount of duty paid on the small amount of oil and on the large amount of solid substance, the hull and the fiber, which made up the exported oil cake? Was it substantially two-thirds of the total, determined by weight,—on thirty-six of fifty-six pounds,— or was it about one-fourth of the total as determined by the relative values of the oil and of the oil cake derived from the seed?

The terms of the provision show that the contingency of having one kind of dutiable material, from which two or more kinds of manufactured products might be derived, is not specifically provided for. Obviously only a part, the least valuable part, of the materials or ingredients of the linseed were used in the making of oil cake, and therefore the problem of determining the "drawback equal in amount to the duties paid" on the part so used—the solid parts of the seed and the small amount of oil in the oil cake—was not a simple or an easy one.

The statute, thus indefinite if not ambiguous, called for construction by the Department and the regulation adapted to cases such as we have here, commends itself strongly to our judgment.

It does not seem possible that Congress could have intended that two-thirds of the duty should be returned when one-quarter in value of the manufactured product should be exported; or that the exporter should retain twenty pounds of oil, estimated in the findings as worth about seven and a half cents a pound, derived from each bushel of seed, and recover two-thirds of the duty paid when he exported thirty-six pounds of seed cake, worth slightly more than one cent a pound, derived from the same bushel of seed. Such results—they must follow the acceptance of the appellant's contention,—should be allowed only under compulsion of imperative language such as is not to be found in the section we are considering.

We prefer the reasonable interpretation of the Department, which results in a refund of one-quarter of the duty when one-quarter of the value of the product is exported.

From *Edwards* v. *Darby*, 12 Wheat. 206, to *Jacobs* v. *Prichard*, 223 U. S. 200, it has been the settled law that when uncertainty or ambiguity, such as we have here, is found in a statute great weight will be given to the contemporaneous construction by department officials, who were called upon to act under the law and to carry its pro-

visions into effect,—especially where such construction has been long continued, as it was in this case for almost forty years. before the petition was filed. *United States* v. *Hill*, 120 U. S. 169.

To this we must add that the Department's interpretation of the statute has had such implied approval by Congress that it should not be disturbed, particularly as applied to linseed and its products.

The drawback provision, under which the construction complained of originated, continued unchanged from 1861 until the revision of the statute in 1870, and the Court of Claims finds that the rule for determining the drawback on oil cake was applied during the whole of that period of almost ten years. The Tariff Act, approved July 14, 1870, c. 255, 16 Stat. 256, 265, expressly provided, in the flax- seed or linseed paragraph, "That no drawback shall be allowed on oil cake made from imported seed," and this provision was continued in the Tariff Act of March 3, 1883, c. 121, 22 Stat. 488, 513, and in the Act of October 1, 1890, c. 1244, 26 Stat. 567, 586. But in the Act of 1894, 28 Stat. 509, 523, the prohibition was eliminated, thus restoring the law on this subject as applied to this material to what it was in substance from 1861 to 1870. *United States* v. *Philbrick*, 120 U. S. 52, 59. During all the intervening twenty-four years this rule of the Department with respect to drawbacks had been widely applied to many articles of much greater importance than linseed or its derivatives, and the practice was continued, linseed included after 1894, until the petition in this case was filed. The reënacting of the drawback provision four times, without substantial change, while this method of determining what should be paid under it was being constantly employed, amounts to an implied legislative recognition and approval of the executive construction of the statute, *United States* v. *Philbrick, supra; United States* v. *G. Falk & Brother,* 204 U. S. 143, 152; *United States* v. *Cerecedo*

·*Hermanos y Compañia*, 209 U. S. 337; for Congress is presumed to have legislated with knowledge of such an established usage of an executive department of the Government.  *United States* v. *Bailey*, 9 Pet. 238, 256.

This case would not deserve even the limited discussion which we thus have given it were it not for the extensive and long continued application of the regulation of the Department to imported and exported materials other than such as are here involved.  This specific case is sufficiently ruled by the clear and satisfactory decision of the Circuit Court of Appeals for the Second Circuit, rendered twenty-two years ago, in *United States* v. *Dean Linseed-Oil* Co., 87 Fed. Rep. 453, in which the Court of Claims found authority for dismissing the plaintiff's petition.  The judgment of the Court of Claims is

*Affirmed.*