## WATTS v. COMMISSIONER OF INTERNAL REVENUE.

### SICARD v. SAME.

### SLOANE v. SAME.

#### Nos. 91–93.

Circuit Court of Appeals, Second Circuit.

March 4, 1935.

James P. Quigley, of Olean, N. Y., John F. McCabe, of New York City, and Robert J. Helberle, for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

J. S. Y. Ivins, of Washington, D. C. (Brewster, Ivins & Phillips, of Washington, D. C., of counsel), amicus curiæ.

Edward H. Green and John A. Woodbridge, both of New York City (Sullivan & Cromwell and Samuel Seabury, all of New York City, of counsel), amicus curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

As the petitions all raise the same questions and were argued together, one opinion will be sufficient to dispose of them.

In December, 1924, the three petitioners, owning all of the stock of United States Ferro Alloys Corporation, a corporation to be hereafter designated merely as Alloys, exchanged all of their stock for stock in the Vanadium Corporation of America, a corporation which will herein be called Vanadium, and for mortgage bonds of Alloys which were guaranteed both as to the payment of principal and of interest by Vanadium. The contract was made in behalf of all of the petitioners by one of them and provided that an agreed number of Vanadium shares should be placed in escrow until January 1, 1926, from which there should be transferred to each of the petitioners such an amount of the stock, whose value for the purposes of the exchange was agreed to be $30 per share, as should be determined on the basis of the demonstrated earning power of Alloys in 1925. The contract was fully performed, and, when performed, the petitioners had, in place of all the stock of Alloys, 32.103 shares of Vanadium and bonds of Alloys to the amount of $1,161,194.50. Though the contract also included payments by Vanadium in cash to creditors of Alloys, the parties stipulated before the Board that the petitioners thereby received no taxable income. The business of Alloys continued to be conducted by that corporation until it was dissolved in 1928.

The position the respondent takes is that the petitioners sold their stock in Alloys and are taxable upon gains then realized as by a sale of stock at a profit. The petitioners contend that the transaction was tax free under section 203 of the Revenue Act of 1924 (26 USCA § 934), because they received only stock and bonds of corporations which were parties to a reorganization within the meaning of that statute.

The controlling facts may be stated in one sentence. The petitioners exchanged all of the stock of Alloys solely for stock in Vanadium and bonds of Alloys.

Section 203 (b) (2) of the Revenue Act of 1924 (26 USCA § 934 (b) (2), provided that: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

And section 203 (h) of the same statute provided, so far as here applicable, that: "(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation. * * *)" 26 USCA § 934 (h) (1) (A).

Article 1574 of T. R. 65, in so far as pertinent to the present problem, provided that under the law above noted " * * * no gain or loss shall be recognized to the shareholders from the exchange of stock made in connection with the reorganization. * * * If two or more corporations reorganize, for example, by either * * * (3) the sale of the stock of B to A, or * * * (6) the acquisition by A of a majority of the total number of shares of all other classes of stock of B. * * *"

Since the transaction here involved is one that verbally falls within the concept of "reorganization" as shown by the regulation—as all of the stock of Alloys went to Vanadium, either subdivision (3) or (6) covers the transaction—the real issue is simply whether the regulation has unlawfully broadened the statutory definition of "reorganization." The plan of reorganization was the contract made and performed.

In the above statute it will be seen that reorganization was defined to be a merger or consolidation, with those terms somewhat expanded by matter in parenthesis "so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words —so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation." Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 470, 53 S. Ct. 257, 260, 77 L. Ed. 428. In Cortland Specialty Co. v. Commissioner, 60 F.(2d) 937, we had before us the taxable effect under the similar section 203 (h) (1) of the Revenue Act of 1926, 26 USCA § 934 (h) (1) of a sale of the assets of a corporation for cash and short-term notes, and held that the gain from the transaction was not tax free. In that connection we discussed merger and consolidation generally in their relation to a reorganization within the meaning of the statute, but the facts there did not present the issue now before us. And in C. H. Mead Coal Co. v. Commissioner (C. C. A.) 72 F.(2d) 22, while the precise question here was not involved, the necessity for giving a liberal scope to the words "merger" and "consolidation" as used in the statute, which, as already noticed, was in respects now essential like the statute controlling here, was recognized.

We think the legislative history of the statute requires its interpretation in a way which shows that the Board in this instance was in error in sustaining the deficiencies. It was divided in opinion, with the majority taking the view that there was no "reorganization" while there was no dissolution of Alloys.

In the Revenue Act of 1918, Congress for the first time dealt with the effect of reorganization upon taxation, and provided in section 202 (b), 40 Stat. 1060 that " * * * when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange. * * *"

The terms "reorganization," "merger," and "consolidation" were left without especial definition for the purposes of the statute, and the Treasury Department promulgated Regulations 45, which required in such a situation as that before us the dissolution of the corporation whose stock was

acquired by another corporation as a condition precedent to sustaining the claim of freedom from taxation which the petitioners make. In 1921, however, Congress saw fit to change the statute and then included in section 202 (c) (2) of the 1921 act, 42 Stat. 230, the same statutory definition of reorganization which was carried into the 1924 act and is effective here. The term "reorganization" was the subject of some controversy between the House and the Senate, but this was resolved as is shown by the report of the Conference Committee, which stated:

"The Senate amendment adds to this definition the case where one corporation acquires at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation; * * * and the House recedes." Comf. Rep. No. 486, 67th Congress, 1st Session, pp. 17 and 18.

After the 1921 act went into effect, the Treasury Department promulgated regulations which differed from those under the 1918 act. The language found both in subdivision (3) and in (6) of T. R. 65, art. 1574, above quoted, was used to define a reorganization. T. R. 62, art. 1566 (b). It will thus be seen that the regulations no longer required a dissolution of the corporation whose stock was acquired in order to entitle persons in the situation of these petitioners to make such an exchange on a tax-free basis.

In 1924 Congress enacted the statute under which these deficiencies were assessed, and then had under consideration whether article 1566 of T. R. 62, in providing that in the case of a reorganization no gain or loss should be recognized to the corporations as well as to the stockholders, had, in putting the corporations in a reorganization on the same basis with stockholders, gone beyond the scope of the 1921 act. It was proposed to resolve this difficulty by changing the statute so as to eliminate all doubt about the validity of the regulations in this respect. The Senate Committee reported on the subject that:

"There is no corresponding provision of the existing law, although this paragraph embodies the construction placed by the Treasury Department upon the existing law. The present ruling of the Treasury Department is of doubtful legality and a statutory provision is most necessary." Sen. Rep. No. 398, 68th Congress, 1st Session, pp. 14 and 15.

This proposed change was made. Nevertheless, the definition of reorganization as it had been in section 202 (c) of the 1921 act was re-enacted without material change in section 203 (h) (1) in the 1924 act, 26 USCA § 934 (h) (1). Under well-established principles of construction, this re-enactment of the definition of reorganization after it had been interpreted by regulation is strong evidence that Congress intended section 203 (h) (1) to include within the meaning of the word as there defined such an exchange of stock for stock and bonds as these petitioners made. Zellerbach Paper Co. v. Helvering, 293 U. S. 172, 55 S. Ct. 127, 79 L. Ed. ——; United States v. Dakota-Montana Oil Co., 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893; Norwegian Nitrogen Products Co. v. United States, 288 U. S. 294, 53 S. Ct. 350, 77 L. Ed. 796; Costanzo v. Tillinghast, 287 U. S. 341, 53 S. Ct. 152, 77 L. Ed. 350; McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 51 S. Ct. 510, 75 L. Ed. 1183; Shearman v. Commissioner (C. C. A.) 66 F.(2d) 256. In our opinion, therefore, subdivisions (3) and (6) of article 1574 of T. R. 65 are valid, and either makes it impossible to affirm the decision of the Board of Tax Appeals sustaining the deficiencies determined in the case of each of these petitioners. Having had the opportunity, it is to be presumed that, if Congress had intended, contrary to the regulation in force, to have the gain from such an exchange as this be tax free only when there was a dissolution of one of the corporations or some other change in the corporate structure such as would commonly take place in a merger or consolidation, strictly speaking, it would have said so. The fact that it changed a related part of the statute to remove any doubt as to the validity of a regulation and at the same time re-enacted the part which had been construed by the regulation which governs here shows an adoption of such construction. National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; United States v. Cerecedo Hermanos Y Compania, 209 U. S. 337, 28 S. Ct. 532, 52 L. Ed. 821; Francisco Sugar Co. v. Commissioner (C. C. A.) 47 F.(2d) 555.

Decisions reversed.