## MINNESOTA TEA CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10031.

Circuit Court of Appeals, Eighth Circuit.

March 25, 1935.

WOODROUGH, Circuit Judge, dissenting.

Homer Hendricks, of Washington, D. C., and James G. Nye, of Duluth, Minn. (Oscar Mitchell, of Duluth, Minn., C. J. McGuire, of Washington, D. C., Mitchell, Gillette, Nye & Harries, of Duluth, Minn., and Miller & Chevalier, of Washington, D. C., on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Maurice J. Mahoney, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Ellsworth C. Alvord, of Washington, D. C., and Edward H. McDermott, of Chicago, Ill., amici curiæ.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals.

The decision and the order based thereon redetermined a deficiency in the income tax of petitioner for the period of January 1, 1928, to August 24, 1928, in the sum of $72,686.90.

The salient facts stipulated before the Board of Tax Appeals and leading up to the decision and order of redetermination are substantially as follows: The petitioner is a Minnesota corporation, and was, until the transfer of its assets hereinafter mentioned, engaged in the business of selling teas, coffees, and groceries at retail. All of its stock was owned by three individuals.

In July and August, 1928, it negotiated and completed a transfer of its business to the Grand Union Company, and, leaving out of consideration a preliminary disposition of certain real estate and assets not of vital importance in the present controversy, it made the transfer of its assets and business, pursuant to a plan described as a reorganization plan and approved by its Board of Directors and by its stockholders, in substantially the following manner: It turned over all of its property to Grand Union Company, receiving in exchange $426,842.52 cash and voting trust certificates representing 18,000 shares of the no-par common stock of Grand Union Company having a market value of about $30 a share, or a total of $540,000.

The $426,842.52 cash was distributed immediately to the three stockholders of the Minnesota Tea Company, and they assumed and paid liabilities of that company amounting to $106,471.73, leaving them net $320,370.79. The voting trust certificates were retained and continued to be held by the Minnesota Tea Company.

The respondent, Commissioner of Internal Revenue, held that the word "distribute," as used in section 112 (d) (2) of the 1928 Revenue Act (26 USCA § 2112 (d) (2), should be interpreted to mean a distribution to stockholders to be used for their own benefit, and not a distribution to or for the benefit of creditors; and that the Minnesota Tea Company did not distribute the cash received by it to the extent of the amount of its debts; namely, $106,471.73.

The Commissioner further held that there was a deficiency in the income tax of the Minnesota Tea Company in the sum of $11,587.64.

The Commissioner also held that the transfer from the Minnesota Tea Company to the Grand Union Company was a "reorganization," as set out in section 112 (i) (1) (A) of the 1928 act, 26 USCA § 2112 (i) (1) (A), "in that it was the acquisition by one corporation of all the properties of another corporation." The Commissioner cited G. C. M. 3827, VII–2 C. B. 114.

The matter was thereafter brought before the Board of Tax Appeals for review upon the issue whether the petitioner had realized a taxable gain of $106,471.73 as a result of the transactions above set forth.

The petition and the answer before the Board of Tax Appeals did not raise any issue as to "reorganization." The Board of Tax Appeals, however, of its own motion, raised the question whether there had been effected a statutory reorganization, and in its decision held that there was no reorganization, and held further that the petitioner by said transaction realized a gain measured by the difference between $254,646.62, the cost of its property, and $966,842.52 (being the sum of $426,842.52 cash and $540,000, the value of the 18,000 shares of the Grand Union Company); and the Board of Tax Appeals further held that this gain of $712,195.90 was taxable. This decision of the Board of Tax Appeals was promulgated June 30, 1933.

Thereafter the following proceedings were had before the Board of Tax Appeals. On July 29, 1933, respondent Commissioner filed a "motion for rehearing," which motion was granted ex parte.

Petitioner thereafter filed a motion to set aside the order granting the rehearing. This motion was denied.

October 25th respondent filed a "motion for leave to file an amended answer." The motion was granted.

In the answer filed, the respondent made claim for the additional deficiency in accordance with the decision of the Board of Tax Appeals.

At a hearing on November 8, 1933, respondent's motion for an increased deficiency was allowed, and thereafter, on November 13, 1933, an order of redetermination was entered fixing the amount of the deficiency in petitioner's income tax for the period January 1, 1928, to August 24, 1928, at $72,686.90.

The present petition for review followed in due course.

Several questions are presented by this petition:

(1) Whether the transaction heretofore described involving the transfer of assets from the Minnesota Tea Company to the Grand Union Company was a reorganization within section 112 (i) (1) (A) of the Revenue Act of 1928.

(2) Whether, even though there was a reorganization, there was a distribution of all the cash received by the Minnesota Tea Company within the meaning of section 112 (d), 26 USCA § 2112 (d).

(3) Whether the procedure before the Board of Tax Appeals in entertaining and allowing the motion for increased deficiency was within the jurisdiction of the Board of Tax Appeals, and was valid.

We turn to the first question.

#### The Wording of the Statute.

Section 112 (i) (1), 26 USCA § 2112 (i) (1), reads as follows:

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115 [sections 2113 and 2115]—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

The particular language of the section relied upon by petitioner as showing that there was a reorganization by the transaction between it and the Grand Union Company is "the acquisition by one corporation of * * * substantially all the properties of another corporation." The language is plain and unambiguous. The ascertainment of its meaning is simple.

In Adams Express Co. v. Kentucky, 238 U. S. 190, page 199, 35 S. Ct. 824, 826, 59 L. Ed. 1267, Ann. Cas. 1915D, 1167, the Supreme Court said: "It is elementary that the first resort, with a view to ascertaining the meaning of a statute, is to the language used. If that is plain there is an end to construction, and the statute is to be taken to mean what it says."

Such has been the doctrine announced in many cases: United States v. Shreveport Grain & Elev. Co., 287 U. S. 77, 83, 53 S. Ct. 42, 77 L. Ed. 175; Matson Navigation Co. v. United States, 284 U. S. 352, 356, 52 S. Ct. 162, 76 L. Ed. 336; Wilbur v. United States, 284 U. S. 231, 237, 52 S. Ct. 113, 76 L. Ed. 261; Corona Coal Co. v. United States, 263 U. S. 537, 540, 44 S. Ct. 156, 68 L. Ed. 431; United States v. Standard Brewery, Inc., 251 U. S. 210, 217, 40 S. Ct. 139, 64 L. Ed. 229; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 451, 21 S. Ct. 906, 45 L. Ed. 1171; Price v. Forrest, 173 U. S. 410, 427, 19 S. Ct. 434, 43 L. Ed. 749; United States v. Goldenberg, 168 U. S. 95, 102, 18 S. Ct. 3, 42 L. Ed. 394.

The doctrine applies with especial force to tax statutes.

In Crooks v. Harrelson, 282 U. S. 55, page 61, 51 S. Ct. 49, 51, 75 L. Ed. 156, the court said: "Finally, the fact must not be overlooked that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness. In United States v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547, after saying that 'in statutes levying taxes the literal meaning of the words em-

ployed is most important for such statutes are not to be extended by implication beyond the clear import of the language used,' we quoted with approval the words of Lord Cairns in Partington v. Attorney-General, L. R. 4 H. L. 100, 122, that 'if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute.' "

In Van Camp & Sons v. Am. Can Co., 278 U. S. 245, page 253, 49 S. Ct. 112, 113, 73 L. Ed. 311, 60 A. L. R. 1060, the court used the following language: "The words being clear, they are decisive. There is nothing to construe. To search elsewhere for a meaning either beyond or short of that which they disclose is to invite the danger, in the one case, of converting what was meant to be open and precise, into a concealed trap for the unsuspecting, or, in the other, of relieving from the grasp of the statute some whom the Legislature definitely meant to include."

If the language of the statute cannot be held conclusive of its meaning, let us briefly advert to other considerations.

### Administrative Construction.

The language of the statute relative to reorganization upon which petitioner relies is found as far back as the Revenue Act of 1921, § 202 (c) (2), 42 Stat. 229, 230. It was re-enacted by Congress in the Revenue Act of 1924, § 203 (h) (1), 26 USCA § 934 (h) (1); in the Revenue Act of 1926, § 203 (h) (1), 26 USCA § 934 (h) (1); and in the Revenue Act of 1928, § 112 (i) (1), 26 USCA § 2112 (i) (1).

Administrative construction, in accord with and recognizing the literal meaning of the words, is to be found in official regulations: Regulations 65 (1924 Act) arts. 1574, 1577; Regulations 69 (1926 Act) arts. 1574, 1577; Regulations 74 (1928 Act) arts. 574, 577. In published rulings of the Treasury: G. C. M. 3827, VII-2 C. B. 114; G. C. M. 1753, VI-1 C. B. 138. In Decisions of the Board of Tax Appeals: Tulsa Oxygen Co., 18 B. T. A. 1283; National Pipe & Foundry Co., 19 B. T. A. 242, 250; First Nat. Bank of Champlain, 21 B. T. A. 415, 422; Robert D. Green, 24 B. T. A. 719, 725.

This long-continued administrative construction of the language of the definition and the repeated re-enactments by Congress without change lead to the application of a well-established principle.

In United States v. Cerecedo Hermanos y Compania, 209 U. S. 337, page 339, 28 S. Ct. 532, 533, 52 L. Ed. 821, the court thus stated the applicable principle of law: "We have said that, when the meaning of a statute is doubtful, great weight should be given to the construction placed upon it by the department charged with its execution. Robertson v. Downing, 127 U. S. 607, 8 S. Ct. 1328, 32 L. Ed. 269; United States v. Healey, 160 U. S. 136, 16 S. Ct. 247, 40 L. Ed. 369. And we have decided that the re-enactment by Congress, without change, of a statute which had previously received long-continued executive construction, is an adoption by Congress of such construction. United States v. G. Falk & Brother, 204 U. S. 143, 152, 27 S. Ct. 191, 51 L. Ed. 411, 414."

See, also, Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 55 S. Ct. 158, 79 L. Ed. ——; Helvering v. Bliss, 293 U. S. 144, 55 S. Ct. 17, 79 L. Ed. ——, 95 A. L. R. 207; Zellerbach Paper Co. v. Helvering, 293 U. S. 172, 178, 55 S. Ct. 127, 79 L. Ed. ——; United States v. Dakota-Montana Oil Co., 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893; Mass., etc., Ins. Co. v. United States, 288 U. S. 269, 53 S. Ct. 337, 77 L. Ed. 739; Old Colony R. Co. v. Commissioner, 284 U. S. 552, 52 S. Ct. 211, 76 L. Ed. 484; Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239; Wisconsin v. Illinois, 278 U. S. 367, 413, 49 S. Ct. 163, 73 L. Ed. 426; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; Logan v. Davis, 233 U. S. 613, 34 S. Ct. 685, 58 L. Ed. 1121; Edwards' Lessee v. Darby, 12 Wheat. 206, 6 L. Ed. 603.

### Intent and Purpose of Congress.

We do not find anything in the surrounding circumstances attendant upon the enactment of section 202 (c) (2) of the Revenue Act of 1921 defining "reorganization," which indicates that Congress was not well informed on the subject-matter of the enactment.

"Reorganization" tax problems were not new at that time. Cases had arisen under the Revenue Acts of 1909, 1913, and 1916. The congressional records show that Congress had the benefit of the knowledge and

experience of the Treasury Department in the preparation of the 1921 Revenue Act.

The language relied upon by petitioner in the case at bar, heretofore quoted, and placed in the Revenue Act of 1921, has been continued in the Revenue Acts of 1924, 1926. and 1928. Clause (B) in section 112 (i) (1) of the Revenue Act of 1928, 26 US CA § 2112 (i) (1) (B), first appeared in section 203 (h) (1) of the Revenue Act of 1924, 26 USCA § 934 (h) (1) (B). We find no indication that clause (B) was intended as a modification of clause (A) or any part thereof. On the contrary, what clause (B) was intended to accomplish and did accomplish was to add a further group of cases to the definition of "reorganization."

The Ways and Means Committee explained the addition of clause (B) in the following language (H. Rept. No. 179, 68th Congress, 1st Session, p. 16):

"Section 203 (h):

"(1) Subdivision (h) (1) contains a definition of reorganization which corresponds to the definition contained in section 202 (c) (2) of the existing law. The only change in the definition is to include within its terms the case of a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders, or both, are in control of the corporation to which the assets are transferred. This is a common type of reorganization, and clearly should be included within the reorganization provisions of the statute."

It is significant that Congress in 1924 did not merely amend clause (A). It retained clause (A) as it was in the Revenue Act of 1921, and specifically added a new clause, covering a different group of cases, clause (B).

This same view has been taken by the Bureau of Internal Revenue.

In G. C. M. 1753, VI–1 C. B. 138, the General Counsel for that Bureau said (in 1927):

"Section 203 (h) (1) (A) is not inconsistent with section 203 (h) (1) (B). One supplements the other. For example, a transfer of all the assets of a corporation constitutes a reorganization under the second part of definition (A) irrespective of the element of 80 per cent control demanded by definition (B). Again, a transfer of but a part of the assets of a corporation can never, of itself, result in a reorganization

under section 203 (h) (1) (A), but it does result in a reorganization under section 203 (h) (1) (B) if there is present an additional element, namely, immediate control of the transferee corporation by the transferor or its stockholders, or both."

A similar view has recently been taken by the Circuit Court of Appeals for the Fourth Circuit in the case of C. H. Mead Coal Co. v. Commissioner, 72 F.(2d) 22, page 27, the court saying:

"The taxpayer's contention in this court is founded upon the view that the case involves no more than a transfer by a corporation of all of its property to another corporation, within the meaning of clause (B) of section 203 (h) (1), and that since neither the old companies nor their stockholders retained control of the new corporation, there was no reorganization within the meaning of the section. It is urged in support of this view that the parenthetical words of clause (A), 'including the acquisition by one corporation of * * * substantially all the properties of another corporation,' may not be read so broadly in respect to the acquisition of property for stock as to nullify clause (B) dealing with the transfer of property for stock. And it is said that we are here concerned with a transfer of property within clause (B) rather than an acquisition of property in a transaction partaking of the nature of a merger or consolidation, because the property was sold under foreclosure at the insistence of the mortgagee, and not by voluntary act of the stockholders, even though the plan for refinancing the enterprise emanated from them.

"In so far as this argument suggests that clause (B) of section 203 (h) (1) modifies or restricts the application of clause (A), we think it has been definitely repudiated by the Supreme Court"—citing Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 469, 53 S. Ct. 257, 77 L. Ed. 428.

The court further said [72 F.(2d) page 29]: "* * * we reach the conclusion that the provisions of clause (A) of the section are to be given their normal meaning and are not restricted by the subsequent provisions of clause (B) so as to make it necessary that in the case of a merger or consolidation, in which there is an acquisition by one corporation of substantially all the properties of another corporation, there must also be a control in the new corporation by the old corporation, or its stock-

holders, to the extent of the ownership of 80 per cent. of the voting stock."

See, also, Watts v. Commissioner (C. C. A. 2) 75 F.(2d) 981, opinion filed March 4, 1935.

But the Board of Tax Appeals, in its majority opinion in the case at bar, has taken a different view. In effect the majority opinion modifies the last portion of clause (A) reading, "or substantially all the properties of another corporation," by adding thereto the condition borrowed from clause (B) and reading, "if immediately after the transfer, the transferor or its stockholders or both are in control of the corporation to which the assets are transferred."

We do not think such limitation of the language in clause (A) is permissible. The restriction on clause (A) thus made by the Board of Tax Appeals is sought to be justified by the decisions in the cases of Pinellas Ice & Cold Storage Co. v. Commissioner (C. C. A.) 57 F.(2d) 188, affirmed 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428, and Cortland Specialty Co. v. Commissioner (C. C. A.) 60 F.(2d) 937. We do not think the cases cited justify the conclusion reached in the majority opinion of the Board of Tax Appeals.

In both the Pinellas Ice Case and the Cortland Specialty Case the exchange was of property for cash and short-time notes. The real question was whether these short-time notes could be considered as securities. In the Courts of Appeals, it was held in both cases that the short-time notes could not be considered as securities, within the provisions of section 203 (b) (3) and (e) of the Revenue Act of 1926, 26 USCA § 934 (b) (3) and (e). The opinions in both cases contained discussions as to meaning of the word "reorganization" as used in the statute.

The Pinellas Ice Case went to the Supreme Court, and was there affirmed; but the Supreme Court in its discussion of the meaning of the word "reorganization" disapproved the definition of the word given by the Circuit Court of Appeals as being too narrow, and cited with approval the conclusion reached by the Circuit Court of Appeals for the Second Circuit in the Cortland Specialty Case.

But in no one of the three discussions do we find support for the holding of the Board of Tax Appeals in the case at bar. Tersely, the Supreme Court in the Pinellas Ice Case said (287 U. S. 462, page 470, 53 S. Ct. 257, 260, 77 L. Ed. 428): "Certainly, we think

that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes."

Furthermore, we think that the broad general purposes of Congress, to favor business transactions including exchanges and sales of assets, to make the statutes more definite, certain, and specific, to reduce the necessity of litigation, to plan for deferments of taxes rather than exemptions, and to disallow technical losses, to rely upon the provisions of section 113 (Revenue Act of 1928, 26 USCA § 2113), to prevent misuse of the gain and loss provisions of section 112, 26 USCA § 2112, point to the construction of the statute which we have above indicated.

The Board of Tax Appeals apparently thought that the intent of Congress required that there should be in a reorganization a continuance of the same actual ownership of substantially the same properties.

We find nothing in clause (A) about the necessity for a continuing interest. That requisite is found as an implication from the provisions of section 112 (b) (3) and (b) (4), 26 USCA § 2112 (b) (3, 4), relative to the consideration consisting solely of stocks and securities. But those provisions are to be read in connection with section 112 (d), 26 USCA § 2112 (d). No particular percentage of the stock of the transferee to be received by the transferor is specified or required. We find no ground for holding that the "continuance of interest" must be of essentially the same interest or that it must be a controlling interest. The provision for percentage of stock to be received, specified in clause (B) reorganizations, has no application here.

Nor was dissolution required on the part of the petitioner. It would seem that section 112 (g), 26 USCA § 2112 (g), expressly recognizes that no dissolution is necessary. Dissolution has not been required since 1922 by the administrative construction of the statute or by the courts. G. C. M. 3291, VII–1 C. B. 203; Pinellas Ice & Cold Storage Co. v. Commissioner, supra; C. H. Mead Coal Co. v. Commissioner, supra.

We hold that the transaction between petitioner and the Grand Union Company was a reorganization within the meaning of the language used in section 112 (i) (1) (A) of the Revenue Act of 1928, 26 USCA § 2112 (i) (1) (A), reading as follows: "the

acquisition by one corporation of \* \* \* substantially all the properties of another corporation."

In view of our holding on the first question presented, we do not find it necessary to consider and determine the third question. We have assumed, but without deciding, that the procedure was regular.

Nor do we think it advisable to pass upon the second question, in the absence of a ruling on the merits thereof by the Board of Tax Appeals.

The petition for review is granted, the order of redetermination of the Board of Tax Appeals is reversed, and the cause is remanded, with instructions for further proceedings not inconsistent with the foregoing opinion.

WOODROUGH, Circuit Judge (dissenting).

The controlling facts in this case are very simple. The Minnesota Tea Company had negotiations for the sale of its stock of merchandise, its receivables, and the good will of its business at a price sufficient to make it a profit of more than $700,000 above the statutory cost of the items, and it decided to make the sale. It evidenced its decision on July 2, 1928, by giving its option contract to sell the property specified, expressly excluding its buildings, fixtures, and real estate, which the purchaser apparently did not want. The option was amended in particulars not material here, and, having been duly exercised, a sale was consummated in conformity with it as of the date of August 4, 1928. The sum of $426,842.52 was paid in cash, being $172,195.90 more than the statutory cost to the tea company. In addition, the tea company received 18,000 shares of the common stock of the purchaser, the Grand Union Company, then being sold on the New York Stock Exchange for around 30 and so worth $540,000. There was an agreement that the tea company would not dispose of the Grand Union Company stock within a year.

Instead of reporting and paying tax on the $700,000 profit which it derived from the sale, the tea company has claimed the whole profit to be exempt, because it says the transaction was a reorganization within the purview of section 112 of the Revenue Act of 1928 (26 USCA § 2112). Its claim is: (1) That there was an acquisition by the Grand Union Company of all the properties of the tea company; and (2) the

tea company took some of the purchase price in stock of the purchaser, and, because those two elements were present in the transaction, there was a reorganization and its gains are exempt from taxation.

1. In order to make it appear that there was "the acquisition by one corporation of \* \* \* substantially all the properties of another corporation" according to the wording of the statute, the tea company went through the following forms of operation after it had given its option contract covering the part of its property that its purchaser wanted (the items are detailed in the record filling fifty pages). It proceeded to organize a corporation called the Peterson Investment Company, and transferred to that corporation all its buildings and real estate and every other one of its assets which the purchaser was not buying in the sale; the purchaser agreeing to rent some of the real estate but not to buy any of it.

The stock of the new corporation was issued to the stockholders of the tea company, and so no real change of beneficial ownership in any property was occasioned, but, when all the assets which the tea company had not agreed to sell were by this device gotten out of its hands, the tea company deemed itself in position to assert its claim that the sale it was making was a sale of all its property—that the transaction was one in which there was "acquisition by one corporation of substantially all the property of another."

I think the disguising of the true nature of the sale by this procedure is exactly the same in principle as that considered and exploded by the Supreme Court and the Circuit Court of Appeals of the Second Circuit in the case of Gregory (cited Helvering v. Gregory, 69 F.(2d) 809; Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 267, 79 L. Ed. —, decided January 7, 1935). In that case there was a chance to sell certain assets belonging to a corporation of which the taxpayer was the sole owner; but, if the corporation had turned the assets over to the taxpayer so that she could sell them, or if the corporation had sold the assets and given the taxpayer the money, in either event there would have been a surtax to pay on the dividend. Accordingly, a new corporation was organized to which the specified assets were transferred and the stock of the new company was issued to the taxpayer. The taxpayer said that the transaction was a reorganization because there was "a transfer by a corporation of \* \* \*

a part of its assets to another corporation" in such circumstances that immediately thereafter "the transferor or its stockholders * * * are in control of the corporation to which the assets are transferred." She said that, since the transaction was a reorganization, her gain (i. e., the stock she received in the new corporation) should not be recognized because the stock of the new corporation was "distributed in pursuance of a plan of reorganization." The new corporation distributed the specified assets to the taxpayer as a liquidating dividend and then went out of business, and the taxpayer thought she had evaded the tax on the dividend.

The Circuit Court of Appeals held that, even though the facts answered the dictionary definitions of each term used in the statutory definition, there was not presented what the statute means by "reorganization" because the transactions were no part of the conduct of the business of either or both companies; so viewed they were a sham. The Supreme Court said:

"It is earnestly contended on behalf of the taxpayer that since every element required by the foregoing subdivision (B) [Sec. 112 (i) (1) (B)] is to be found in what was done, a statutory reorganization was effected; and that the motive of the taxpayer thereby to escape payment of a tax will not alter the result or make unlawful what the statute allows. It is quite true that if a reorganization in reality was effected within the meaning of subdivision (B), the ulterior purpose mentioned will be disregarded. The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. United States v. Isham, 17 Wall. 496, 506 [21 L. Ed. 728]; Superior Oil Co. v. Mississippi, 280 U. S. 390, 395, 396 [50 S. Ct. 169, 74 L. Ed. 504]; Jones v. Helvering [63 App. D. C. 204], 71 F.(2d) 214, 217. But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. The reasoning of the court below in justification of a negative answer leaves little to be said.

"When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made 'in pursuance of a plan of reorganization' (section 112 (g) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no re-

lation to the business of either, as plainly is the case here. Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.

"In these circumstances, the facts speak for themselves and are susceptible of but one interpretation. The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose."

So in this case there is nothing to indicate that the organization of the Peterson Investment Company and the transfer to it of the tea company's property had anything to do with the corporate business of the tea company. It appears to have been simply a contrivance to enable the tea company to simulate a transfer of all its property when, in fact, the actual transaction had with its purchaser did not relate to all the tea company's property. In substance, that transaction was a sale of part of its property— a taxable transaction—and the nature of the transaction could not be changed by the creation of another corporation merely to hold that part of the taxpayer's property which was not sold.

In the case of Gregory, supra, the corporation owning property transferred the part of its property intended to be sold to

the corporation created for the purpose. In this case the corporation keeps the property intended to be sold, and transfers the rest to a corporation created for the purpose of holding it. The principle applicable to each transaction is the same. The operations are equally artifices, and nothing more. Realities must control—not artifices.

2. But what was done in this case was not reorganization, even if there had been an acquisition by the one corporation of substantially all the property of the other—which there was not. The substance of the taxpayer's claim is that its sale became a reorganization because it took some of the purchaser's stock in part payment of the purchase price. The point is important because to sustain the contention would practically destroy the income tax on gains from sale of capital assets. Whatever the canons may be of construction, certainly the main one is not to construe so as to destroy. If it is the law, it would be folly to close any large sale without including some of the purchaser's stock in the purchase price, especially as in this case, where the purchaser's stock was for sale on the New York Stock Exchange. Though the tax on gains from sales is not repealed, none but the simple would need to pay it. But the able majority opinion of the Board of Tax Appeals demonstrates to my mind that it is not the law, and the decisions of the Circuit Courts of Appeals in West Texas Refining & Development Co. v. Commissioner of Internal Revenue (C. C. A. 10) 68 F.(2d) 77; John A. Nelson Company v. Commissioner of Internal Revenue (C. C. A. 7) 75 F.(2d) 696, decided February 23, 1935; and John J. Watts, Hugh C. Sicard and Parker Sloane v. Commissioner of Internal Revenue (C. C. A. 2) 75 F.(2d) 981, confirm the Board.

In the case of Cortland Specialty Co. v. Commissioner, 60 F.(2d) 937, 940, the true intent and meaning of the reorganization provision of the Revenue Law was fully considered by the Court of Appeals of the Second Circuit, and it was shown that it was the purpose of Congress "to relieve those interested in corporations from profits taxes in cases where there was only a change in the corporate form in which business was conducted without an actual realization of any gain from an exchange of properties. * * * In defining 'reorganization,' section 203 of the Revenue Act [26 USCA § 934, now section 212, 26 USCA § 2112] gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate forms."

The Supreme Court in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, page 470, 53 S. Ct. 257, 77 L. Ed. 428, says that its general view (of the true meaning and intent of the statute) is adopted and well sustained in the Cortland Case, and it seems to me that declaration is conclusive against the claim for exemption in this case. The transaction of the tea company shown by the record in this case was simply a selling out of some of its property at a profit, and nothing else. Nothing indicates that the stock of the purchaser which it took on the sale as part of the purchase price was taken as a means of continuing its interest in the tea business. It only got 7½ per cent. of the outstanding stock of the Grand Union Company, and it quit the tea business and took its gains in money and in stock which was equivalent to money, and which it was free to turn into money at the end of the year. To call the transaction anything other than a sale is to ignore the reality.

It is clear to my mind that the taxpayer owes the government some seventy odd thousands of dollars of income tax; that the forms it went through did not affect the substance of the transaction or its liability; and that the decision of the Board of Tax Appeals ought to be affirmed.