(C. D. 124)

Kilburn Mill *v.* United States

United States Customs Court, First Division

(Decided March 13, 1939)

*Joseph F. Lockett* for the plaintiff. *Roland Hoag*, associate counsel.

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: The issue raised by these protests is the proper method of ascertainment of relative values, for the purpose of apportioning drawback, on three products which resulted from manufacturing processes to which imported raw Egyptian cotton had been subjected for the purpose of manufacturing cotton yarn therefrom.

The record is barren of details as to the particular manufacturing processes employed, but it is undisputed that at a certain stage of the processes the raw cotton was separated into three products, namely, combed cotton sliver, combed noils, and card strips. It is likewise undisputed that the first of these products was subjected to further processes of manufacture the end of which was to produce fine cotton yarn, and that the noils and strips were sold and exported.

Section 313 (a) of the Tariff Act of 1930, so far as pertinent, provides as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties * * *. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

The matter at issue is the relative values of the sliver, noils, and strips in order to determine the amount of drawback due as the result of the exportation of the noils and strips.

At the outset it may be stated that the facts of importation, manufacture, and exportation, and of compliance with the applicable customs regulations are not disputed.

It is not seriously disputed that the product sought as the result of the processes to which the raw cotton in issue was put was combed

cotton sliver, which is the long, combed fibers desired for the production of fine cotton yarn, and that as byproducts in the production of such sliver were combed noils, which are the shorter and less desirable fibers, and strips, which are fibers stripped from the raw cotton during the carding operation. Counsel for the plaintiff makes the point of stressing the fact that noils and strips are the primary product used in the manufacture of cotton yarn of a quality inferior to that produced with the use of sliver, but it is amply established by the record that the primary purpose of the processes of manufacture to which the raw Egyptian cotton in issue had been subjected was the production of sliver and that noils and strips were merely byproducts.

It is likewise undisputed that at the point of separation which forms the basis for the calculation of drawback in the instant cases, the sliver had no open market value and was not sold in the ordinary course of trade, but the record establishes that at that point, however, there was a market for the noils and the strips.

From the record and an examination of the drawback entries in evidence it appears that in determining the relative values at the time of separation of the sliver, noils, and strips, the collector first determined the total cost of production of all three products by adding to the cost of the cotton used the cost of all labor and overhead. From the total cost so obtained the collector deducted the amounts actually realized on the sale and exportation of the noils and strips. The remainder he considered to be the value of the sliver at the time of separation. He considered the values of the noils and strips to be the actual amounts realized on the sale thereof, which it appears represented the actual market values thereof.

The foregoing method is characterized by counsel for the plaintiff as the "cost v. market value" method, and he contends that it fails to represent the true relative values since the value of one product is based upon its cost while the values of the other two products are based upon their market value; i. e., the values are taken on different bases.

The method which it is contended the collector should have used is denominated by plaintiff's counsel and its witnesses as the "cost value v. cost value" method. This would require the determination of the cost of the sliver by ascertaining the cost of materials, labor, and overhead used to produce the quantity of sliver obtained, the cost of the noils by ascertaining the cost of materials, labor, and overhead used to produce the quantity of noils obtained, and the cost of the strips by ascertaining the cost of materials, labor, and overhead used to produce the quantity of strips obtained.

The outstanding fallacy of the method contended for by the plaintiff is that it assumes that the byproducts—noils and strips—*were produced*

*on a cost basis.* This, of course, is not the fact. As already stated, the product desired was the sliver; the noils and strips were unsought for, but inevitable results of the operations necessary to produce sliver.

Since the noils and strips were not produced on a cost basis any attempt to assign them values based upon cost must result in values which have no basis in fact and which are not in true relation to the value of the sliver.

It is complained by the plaintiff that the method used by the collector results in the establishment of values not relative since the value of the sliver is figured on a cost basis while it is claimed the values of the noils and strips are figured on a market-value basis. Since the sliver was produced on a cost basis and was not sold in the market in the ordinary course of trade its only value at the time of separation was its cost, that is, the total cost of material, labor, and overhead used in producing it, less any amounts recoverable by the sale of byproducts. The only value the byproducts had at that time was the price which could be obtained for them in the market. Thus the values of the sliver, noils, and strips found by the collector are relative in that they represent the only values the products had at the time of separation and they represent the real values of such products so far as they could be determined at that time.

The protests are therefore overruled and the decision of the collector is affirmed. Judgment will issue accordingly.

### DISSENTING OPINION

Brown, Judge: The purpose of Congress in expressly including exported products which were jointly made with those for domestic use according to their relative values was thus to promote foreign trade by drawback of duty by means of a just and fair measurement between the two joint products.

It is not a just and fair measure of apportionment to find value from sales for the export, and from production or factory cost for the other not exported. If the slivers had had a sales value both, by common consent, would have been apportioned by their sales value.

Here they could not be so compared, because the slivers lacked a sales value. In such case Congress must have intended the relative factory cost should be used for both. There is no question here of principal and byproducts. The exported noils and strips are admittedly entitled to drawback of duty as the statute expressly provides. The sole question is how much, i. e., the method of measuring the amount of the drawback.

The amounts of the cost or factory figures as claimed by the exporter are not disputed by the Government officials. They make as applied to both a reasonable and fair apportionment. However,

to apply one yard stick to one, and another yard stick to the other, makes an unfair apportionment on its face which Congress could never have intended by the language used.

Before this rule was expressly set up by the law, when it was worked out by Government regulation for joint products, weight instead of value was held to be an unfair proportion and therefore outside of the law and the intent of Congress. *National Lead Co.* v. *United States*, 252 U. S. 140.

Here the use of two different yard sticks for the different products is also plainly bad for the same reason.

It is a matter of common knowledge that factory costs always differ widely from sales prices in completed articles. Yet both are used in different circumstances for determining "value," the term used in this statute. The record here shows as to these incomplete, or intermediate, products such differences are extremè. Comparing the factory cost of one with the sales price of the other, therefore, arrives· at the amount of drawback by a purely arbitrary and unfair method. Such purpose should not be imputed to Congress in passing this beneficent statute for the benefit of foreign trade, as an essential part of a ·protective tariff system. In statutory interpretation arbitrary and unreasonable results, tending to thwart the very purpose for which the statute was passed, should always be avoided.

The protest should be sustained.