Petition of Alva K. PHILLIPS, Austa M. Phillips and Monty Paul Phillips, For a Writ of Habeas Corpus and for a Writ of Mandamus.

No. 2158.

United States District Court
S. D. California, S. D.
Oct. 23, 1958.

and that such enlistment was made by him without the written consent of his parents; that about December 31, 1957, and within ninety days from such enlistment, the parents made application, pursuant to Section 6293 of Title 10 of the United States Code for the discharge of said Marine; that the Secretary of the Navy, on January 10, 1958, refused such discharge; that Monty Paul Phillips is being detained in the military service unlawfully and by illegal acts and omissions of the Secretary of the Navy.

The return alleges that petitioner Monty Paul Phillips enlisted in the Marine Corps on November 21, 1957, for a term of four years, has performed duty and service customary under such enlistment, is under the command of the respondent making the return; that he has not been subjected to any disciplinary action of any kind, and is under no restraint except those which the usual requirements of military life may impose.

It is admitted that the application for discharge mentioned in the petition was made, and that the same was denied by the Secretary of the Navy who cited as his authority Section 456(*l*) [1] of Title 50 U.S.C.A. Appendix.

Since the petition was filed, the issues set forth therein and arising therefrom have been the subject of extended briefs of counsel, and for the purpose of receiving further briefs and written argument. the Court has, with the consent of counsel, continued the hearing on the application from time to time until on September 12, 1958, the application was submitted by stipulation and order, for decision.

In his brief filed June 27, 1958, counsel for respondent mentions at page 1 that respondent will assume, for the purposes of argument, that petitioner is in sufficient custody in order to maintain the habeas corpus jurisdiction of this Court under 28 U.S.C.A. § 2241, but intimates that the "custody point" is doubtful, and reserves the right to argue the issue at

———◆———

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Jordan A. Dreifus, Los Angeles, Cal., for respondent.

Luce, Forward, Kunzel & Scripps, San Diego, Cal., Robert E. McGinnis, San Diego, Cal., for petitioner.

WEINBERGER, District Judge.

Monty Paul Phillips, a member of the United States Marine Corps, and his parents filed a petition for a writ of habeas corpus or mandamus to inquire into his detention by officials of the Marine Corps within this District and Division.

It is alleged in the petition that Monty Paul Phillips was born on the 7th day of January, 1939; that on November 20, 1957, at the age of 18 years, he enlisted in the United States Marine Corps

---

1. This refers to 456 (the letter *l*—not the number one).

a later date. As of the date of this memorandum, no further argument on the part of respondent has been directed to whether the petitioner is or is not within "custody" as the word is used in said section.

It is obligatory upon the Court, however, to ascertain its own jurisdiction, whether or not the same be questioned by either party.

The Court is of the opinion that the petitioner is "in custody" within the requirements of Section 2241 of Title 28 U.S.C.A. and that the application for writ of habeas corpus is a proper remedy to test the legality of his detention in the Marine Corps. United States ex rel. Orloff v. Willoughby, D.C., 104 F. Supp. 14, affirmed 9 Cir., 195 F.2d 209, affirmed 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842.

Title 10 U.S.C.A. § 6293(a), as it was enacted August 10, 1956, reads:

> "(a) Upon application by a parent or guardian of any enlisted member of the naval service made to the Secretary of the Navy within 90 days after the member's enlistment, the member shall be discharged for his own convenience if—

> "(1) there is evidence satisfactory to the Secretary that the member is under 21 years of age; and

> "(2) the member enlisted without the written consent of his parent or guardian, if any."

The respondent relies upon Section 456(l) of Title 50 U.S.C.A. Appendix (Universal Military Training and Service Act) which states:

> "(l) Notwithstanding any other provisions of law, no person between the ages of eighteen and twenty-one shall be discharged from service in the armed forces of the United States, while this title (sections 451–454 and 455–471 of this Appendix) is in effect because such person entered such service without the consent of his parent or guardian."

The Universal Military Training and Service Act was preceded by the Selective Service and Training Act of 1940, (50 U.S.C.A. Appendix, § 301 et seq.) the latter being based on the Draft Act of 1917. Local Draft Board No. 1 v. Connors, 9 Cir., 124 F.2d 388, 390. By the 1940 Act Congress declared it was imperative to increase and train the personnel of the Armed Forces of the United States and provided that every male citizen of the United States between the ages of 21 and 36 should be liable for training and service in the land or naval forces of the United States; that each man inducted should serve for 12 consecutive months; that within quota limits any person between 18 and 36 should be afforded the opportunity to volunteer for induction for the training specified in the Act, and thus be exempted from the draft. It was also provided that the draft provisions should expire on May 15, 1945 unless Congress should extend the same.

At the time World War II was declared the draft age was 20, there were in effect under the Selective Service and Training Act provisions for volunteering for the service and training specified in the Act in lieu of being drafted; there were also in effect provisions for the voluntary enlistment of men 18 or over, with no requirement for parental consent; there were also provisions for discharging men between 18 and 21 who enlisted without the consent of parents, and discharges were being granted under said sections. See Ex parte McCollam, D.C., 45 F.Supp. 759, decided June 16, 1942.

By legislation effective November 13, 1942 the draft age was lowered to 18, and the same Congress added subdivision (i) to Section 305(2) of the Selective Service and Training Act of 1940, which subdivision was re-enacted into the Selective Service and Training Act of 1948 as Section 456(l) of Title 50 U.S.C.A. Appendix, quoted above. By the 1951 enactment the termination date of the Act of 1948 was deleted, it was amended to provide that inductions would

be permitted only to July 1, 1959, and re-named the Universal Military Training and Service Act.

In 1957 when petitioner enlisted in the Marine Corps the laws with reference to minors were similar to those in effect since November, 1942; 18-year-olds could be drafted for service and training under the Universal Military Service and Training Act, or they could volunteer for the service and training provided in the Act and avoid being drafted or they could enlist in the Armed Forces at the age of 18, with no requirement for parental consent, and there appeared in Title 10, Section 6293(a) the provision for release of those between 18 and 21 who had enlisted without their parents' consent.

There is, on the face of it, a conflict between the subdivision (l) of Section 456 of the Universal Military Service and Training Act and Section 6293(a) of new Title 10—the latter stating that a minor enlisted without consent of parent or guardian may be discharged upon proper application of such parent or guardian, and the former stating that "notwithstanding any other provisions of law" the same minor cannot be discharged because he enlisted without the consent of his parent or guardian.

It might seem a happy solution to restrict the application of 456(l) of Title 50 U.S.C.A. Appendix to those enlistments under the Act which contains the section, and leave Section 6293(a) of Title 10 free to apply to enlistments under the Act in which such latter section is found. Such a construction, however, would give rise to the incongruous situation of an 18-year-old enlisting in the regular Marine Corps so that he could choose the branch of service he preferred and take care of his obligation to his country at his own convenience, then being discharged within 90 days, and later drafted into another branch of the service.

A consideration of the state of the nation at the time the predecessor to Section 456(l) of Title 50 U.S.C.A. Ap-pendix was passed is enlightening. World War II was upon us. There was great need for increasing the strength of our armed forces. Identical bills for lowering the draft age from 20 to 18 had been presented to both the House and Senate, and were in committee hearings. (See hearings October 14 and 15, 1942, on S. 1644 and H.R. 7528.)

Undersecretary of War Robert B. Patterson appeared before both the House and Senate Committees on Military Affairs, and alluded to the incongruity between the law proposed to be passed permitting the drafting of 18-year-olds, and the law which had been in existence since 1924 permitting the discharge of men enlisted at ages 18 to 21 without consent of parents. It was suggested by some members of the committee that the section permitting discharge (Title 10 U.S.C.A., Section 653, one of the predecessors of present Section 6293(a) of Title 10 U.S.C.A.) be repealed to obviate the inconsistency; reference was made to whether or not the provision permitting discharge of minors should not be retained as part of the "permanent" law so that it might be effective during peacetime; discussion also was had as to whether or not it could be "suspended" during the duration of the war; it was proposed that language forbidding the discharge of such minors while the Selective Service and Training Act was in effect should be inserted in the Act. Undersecretary Patterson also testified before the House Committee on the same day and presented the wording proposed in the Senate Committee; the provision was inserted into the Act in exactly the words he proposed, and it appears in the statute today in exactly the same words. The same Bill also lowered the draft age to 18.

 We agree with counsel for the respondent that it is proper to consider these hearings. As was stated in United States v. C. I. O., 335 U.S. 106, 112, 113, 68 S.Ct. 1349, 1352, 92 L.Ed. 1849, "The purpose of Congress is a dominant factor in determining meaning. There is no better key to a difficult problem of

statutory construction than the law from which the challenged statute emerged. Remedial laws are to be interpreted in the light of previous experience and prior enactments. Nor, where doubt exists, should we disregard informed congressional discussion." See also Harrison v. Northern Trust Co., 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407; Cole v. Young, 351 U.S. 536, 550, 76 S.Ct. 861, 100 L.Ed. 1396; Shapiro v. United States, 335 U.S. 1, 31, 68 S.Ct. 1375, 92 L.Ed. 1787.

In addition, we note that the Report of the Senate Committee on Military Affairs on the identical Senate Bill, (No. 2748) carries the notation: "Section 4(i) makes inoperative while this act is in effect the provisions of existing law which require the discharge of men who are less than 21 years of age who have enlisted without their parents' consent. Such provisions are incompatible with the provisions of this bill."

When the Selective Service and Training Act of 1948 was enacted, the selective service procedures were re-established in substantially the same manner as under the 1940 Act, and the section forbidding discharges of minors because of lack of parental consent became Subdivision (*l*) of Section 456, Title 50 U.S. C.A.Appendix. The legislative history, 1948 U.S. Code Congressional Service, p. 2002, mentions the section as follows:

"Minority discharges.—This re-enacts subsection 5(i) of the 1940 act, and forbids discharges of persons between ages 18 and 21 if the sole reason is lack of parental consent to enter the service."

█ Let us turn to administrative construction—a powerful aid in resolving judicial perplexity over legislative ambiguity—and an aid sanctioned by highest authority. National Lead Co. v. United States, 252 U.S. 140, 145, 146, 40 S.Ct. 237, 64 L.Ed. 496; United States v. Plesha, 352 U.S. 202, 204, 77 S.Ct. 275, 1 L.Ed.2d 254.

There is no argument between counsel as to what the administrative construc-

tion of these apparently conflicting statutes has been since November of 1942, and such construction appears from the affidavit of August Larson, Brigadier General of the United States Marine Corps, Director of Personnel of the United States Marine Corps, on file herein.

From the General's affidavit we learn that prior to November of 1942 there was an administrative requirement that enlistments of persons between 18 and 21 in the Marine Corps must be accompanied by parental consent although there was and is no statute to such effect; that this provision was enforced administratively because of the section (predecessor to 10 U.S.C.A. § 6293(a)) permitting the discharge of persons between 18 and 21 who enlisted without such consent. After November of 1942, when the predecessor to Section 456(*l*) 50 U.S.C.A. Appendix was passed, enlistments of men between 18 and 21 were accepted without parental consent, it being the administrative construction (continued since that time) that the statute permitting discharges had been suspended by the legislation of 1942, as long as the Selective Service and Training Act (or its successor, Universal Military Service and Training Act) should be in effect.

█ It is likewise of interest and of importance that the new Title 10 was prepared for the most part by attorneys in the Department of Defense (Report of the Committee on the Judiciary to accompany H.R. 7049 (pp. 16, 21)) and the Bill was "circulated within the Department of Defense and other interested agencies for intensive scrutiny by administrative and legal specialists." It is hardly to be imagined that those administrative and legal specialists of the Military were not aware of the administrative construction of the two sections under consideration here, and we "do not think that Congress should be presumed to have intended that the statute should have a meaning at war with the interpretation of the governmental department charged with its administration."

United States v. Johnson, D.C., 53 F. Supp. 596, 598, affirmed 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236.

Weight is added to the "suspension" theory when we note the several places in the Universal Military Service Act and the Selective Service and Training Act where the words "while this Act is in force" are used; the heading of the new Title 10 "An Act to revise, codify, and enact into law, Title 10 of the United States Code,"; the mention, at page 18 of the Report of the Committee on the Judiciary on Title 10 that laws of *temporary* or *limited* operation have been omitted from the text of the new law, the statement on page 22 of the Report that "all *permanent* laws are codified" in the new Act. (Emphasis supplied.)

It is our view that the section on which respondent relies was inserted in the Selective Service and Training Act in 1942 at the instance of the administrator of *all* the military law for the express purpose of curing the sort of difficulty which is presented to us by this petition for writ of habeas corpus. The section relied upon by the petitioner and the section relied upon by the respondent each have been found in the statutes since 1942, and were reenacted after a long period of administrative construction in the manner set forth above. N. L. R. B. v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337.

It is our opinion that Section 6293(a) of the new Title 10 of 1956 is suspended in its operation by Section 456 (*l*) of Title 50 U.S.C.A. Appendix and that the application for the writ of habeas corpus should be denied.

Since we have ruled that the legality of petitioner's detention may be tested by application for writ of habeas corpus and have ruled on the merits, it is not necessary for us to decide the propriety of a procedure by mandamus.