PHILIP GROSS, PLAINTIFF, v. NEW JERSEY ARMY NA-
TIONAL GUARD, MAJOR GENERAL WILLIAM SHARP,
THE CHIEF OF STAFF, NEW JERSEY ARMY NATIONAL
GUARD, AND MAJOR WILLIAM COONEY, COMMANDER
2ND BATTALLION 50TH ARMOR DIVISION NEW JERSEY
ARMY NATIONAL GUARD, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 10, 1972.

*Mr. Donald B. Devin,* for plaintiff.

*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, for defendants (*Mr. Theodore A. Winard,* Deputy Attorney General, appearing).

MEHLER, J. S. C. (orally). This is an action heard summarily pursuant to *R.* 4:67–1, which authorizes the court to hear cases in a summary manner where permitted by rule or statute.

The action is one brought under the *habeas corpus* statute, *N. J. S. A.* 2A:67–1 *et seq.,* and more particularly § 13, to inquire into the cause of plaintiff's detention by the New Jersey Army National Guard (National Guard) and to compel the Chief of Staff of the National Guard to order the discharge of plaintiff from the National Guard. *Sections* 15 and 25 authorize the Superior Court to hear the matter summarily.

Plaintiff, who is a member of the National Guard, contends that due to a medical condition which preexisted his

enlistment in the National Guard, his induction or enlistment is void and his continued involuntary membership in that organization is in violation of his rights.

I find from the evidence as follows:

Plaintiff, who was born on August 2, 1945 and was therefore subject to the draft in 1965, a time when this country was and still is involved in a conflict in Southeast Asia, was ordered in August 1965 to appear before his local draft board for a preinduction physical examination. He appeared on August 13, as directed. Plaintiff has had an undescended right testicle since birth and had this condition in 1965 and continuously thereafter until the summer of 1971, when it was removed by means of a surgical procedure. The army regulations governing the standards for induction or enlistment, and more specifically A. R. 40-501, 2-14(m)3, which was in effect in 1965 and is still in effect, state that an undescended testicle is a cause for rejection. Plaintiff was classified as acceptable for military service.

Prior to January 1, 1966 plaintiff endeavored to enlist in the National Guard. On August 20, 1966 he received his physical examination by a National Guard physician, whom plaintiff did not apprise of his condition. It has been stipulated that the physical examination was regular and fair. Plaintiff was found fit for military service and on August 21, 1966 was inducted into the National Guard. On the same day he enlisted in and became a member of the Reserve of the Army for service in the Army National Guard of the United States and entered into an enlistment agreement for a period of six years. From August 21, 1966 to the present time he has continuously been a member of the New Jersey Army National Guard and of the Army National Guard of the United States.

On February 14, 1970 plaintiff was given a periodic medical examination at Fort Monmouth and was found qualified for continued retention in the National Guard. A surgical consultation concerning the right testicle was recommended by the examining physician.

In that year plaintiff was informed by an Army doctor that the fact that he had an undescended testicle should have precluded his induction or enlistment in the National Guard.

On March 24, 1971 plaintiff was given another medical examination at Fort Monmouth and again was found qualified for continued retention in the National Guard. The medical examiner found an undescended right testicle and recommended a surgical procedure known as an R Orchnectomy. Following an examination conducted by an officer in a hospital at Fort Monmouth, the doctor concluded that plaintiff was qualified for continued retention in the National Guard.

Plaintiff, having been informed in 1970 that his condition should have precluded his induction, made application in 1971 through appropriate channels for a medical discharge. His case was reviewed by the Chief of the National Guard Bureau, he was found medically qualified for retention, and his request and subsequent requests for discharge were denied. He claims that he is deprived of his liberty, being obliged to report to an armory and various other places. He contends that his detention is illegal in that his induction or enlistment in the National Guard was prohibited by the rules and regulations governing the standards for induction or enlistment, referring specifically to A. R. 40–501, 2–12(m)3.

There are two threshold questions. One is whether this court has jurisdiction of a proceeding to secure the discharge of plaintiff from the Army organization or organizations of which he is a member. The second is whether the *habeas corpus* statute is applicable to this case. They will be considered in their inverse order.

I find that plaintiff, as a member of the National Guard, is obliged to attend drills and other National Guard activities and may not leave the State without permission. He is therefore restrained at times from freedom of action.

I find that so long as plaintiff continues to be a member of the National Guard he is subject to orders and some supervision and is obliged to attend drills and other National Guard activities. He is also subject to being called up for duty when the services of his unit are required. Under present concepts a writ of *habeas corpus* may issue even though the applicant is not actually under physical restraint.

Potential restraint upon one's liberty entitles him to seek *habeas corpus* relief. *Johnson v. Laird,* 435 *F.* 2d 493 (9 Cir. 1970). Retention in the Army is a significant enough restraint on liberty to support *habeas corpus* jurisdiction. *Donigan v. Laird,* 308 *F. Supp.* 449, 451 (D. C. Md. 1969) ; *Hammond v. Lenfest,* 398 *F.* 2d 705, 711, 712 (2 Cir. 1969) ; *In re Phillips Petition,* 167 *F. Supp.* 139 (S. D. Cal. 1958) ; *Crane v. Hedrick,* 284 *F. Supp.* 250 (N. D. Cal. 1968).

The court concludes that *habeas corpus* is an appropriate remedy here.

The question of jurisdiction cannot be decided without considering other facts.

I find from the evidence as follows:

When plaintiff enlisted in 1966 he did so in two components, namely, the New Jersey Army National Guard and the Army National Guard of the United States. By statute *N. J. S. A.* 38A:1–1(d), the Army National Guard of the United States is the reserve component of the Army of the United States all of whose members are members of the Army National Guard. By his enlistment plaintiff became a reservist of the United States Army.

Under National Guard regulations, which are found in the pocket part of 32 *U. S. C. A.,* an individual, upon appointment in the Army National Guard of a state and upon subscribing to an oath of office, has a state status and also acquires a federal status when he is federally recognized and appointed as a Reserve of the Army. 32 *U. S. C. A.* § 564.2(a).

Regulation 564.18, found in the aforementioned pocket part, prescribes the criteria and procedures for effecting the discharge of enlisted personnel of the Army National Guard and in specific cases from enlistment as a reservist of the Army. See *subsection* (a). Under *subsection* (c) the authority to discharge an enlisted person from the Army National Guard rests with the State. By virtue of the same subsection, the authority to discharge an enlisted man from an enlistment as a reservist of the Army rests with the Secretary of the Army and it is delegated to appropriate officers of the Army National Guard designated by the State Adjutant General. Under *subsection* (d) an enlisted person discharged from the Army National Guard of the State for reasons specified in that subsection, is to be concurrently discharged from his enlistment as a reservist of the Army. Under *subsection* (e) an enlisted person who has a remaining service obligation under the Uniform Training and Service Act will be discharged only from the State Army National Guard for reasons enumerated in that subsection. *Subsection* (d), which authorizes concurrent discharges, lists as a ground for such discharge physical disability caused by injuries or illness, which I find neither exist nor are claimed to exist here. *Subsection* (e), which deals with discharges only from the State Army National Guard, lists no reason which can possibly be pertinent to this case.

I find from the testimony that the New Jersey Chief of Staff can, under regulations, grant a concurrent discharge if the criteria of the Army National Guard of the United States are met, and can also grant a concurrent discharge if an enlisted man fails to meet the retention standards. I also find that there is no regulation either of the National Guard or of the Army National Guard of the United States which authorizes separation for an undescended testicle or for any other condition which preexisted the enlistment.

I find that this court, for the reasons now to be stated, has jurisdiction to entertain this application.

The New Jersey Army National Guard is created by state law as a part of the organized militia, *N. J. S. A.* 38A:1–3, and is a component of the New Jersey Department of Defense, *N. J. S. A.* 38A:3–2. Its Chief of Staff, the Adjutant General of the State, is appointed by the Governor. *N. J. S. A.* 38A:3–3, 4. Only by virtue of *N. J. S. A.* 38A:1–6, *N. J. S. A.* 38A:3–6(i) and *N. J. S. A.* 38A:7–3, does a state official such as the Adjutant General have the power and authority to act in military matters pursuant to state and federal laws and regulations. These statutes provide as follows:

*N. J. S. A.* 38A:1–6:
Federal laws and regulations * * * relating to and governing the armed forces of the United States and the militia shall, insofar as the same are applicable and not inconsistent with the constitution of this State, apply to and govern the military forces of this State.
*N. J. S. A.* 38A:7–3:
The administration, discipline and training of the National Guard shall conform to the applicable Federal and State laws and regulations.
*N. J. S. A.* 38A:3–6(i):
Under the direction of the Governor, the Chief of Staff shall: * * * exercise the powers vested in him and perform such other duties and functions as required of him by the Governor and by Federal and State laws and regulations.

▉ Since the Adjutant General of the State is empowered by the state and federal law to discharge an enlisted man from the National Guard and from the Army Reserve for any one of specified reasons, or from the National Guard for other reasons, this court has the power to compel the Adjutant General to enter a discharge if he fails or refuses to do so when a discharge is warranted.

▉ The remaining question therefore to be decided is whether plaintiff is entitled to a discharge. It is his position that his continued retention in the National Guard is unlawful because his enlistment was void due to his preexisting medical condition.

I find from the evidence that plaintiff did have an undescended testicle when he applied for service in the National

Guard and that by virtue of A. R. 40–501, 2–14(m)3 he could have been rejected because of this condition. It does not follow, however, that plaintiff's enlistment was void simply because he could have been rejected for a physical cause. The fact that the National Guard physician who examined plaintiff when he applied for service failed to notice plaintiff's condition or felt that he was qualified, and that plaintiff was not rejected and was therefore enabled to become a member of the National Guard, did not render his enlistment void. The regulation makes no such determination. Nor does logic require it.

I therefore conclude that plaintiff is not entitled to a discharge because of his preexisting physical condition.

I also find from the evidence that when plaintiff was examined in 1971 and when his case was reviewed by the National Guard Bureau he was medically qualified for continued retention in the service.

I conclude that no grounds exist for ordering plaintiff's discharge.

Accordingly judgment will be entered for defendants.